550 S.E.2d 388

**DAIRYLAND INSURANCE CO., Plaintiff below,**

v.

**Joyce FOX, Administratrix of the Estate of Ivan Fox, Jr.; the Estate of Anthony Adkins; the Estate of Stephen Adkins; William Haga and Stephen Lowry, Defendants below,**

**The Estate of Anthony Adkins, Defendant below, Appellee,**

**State Farm Mutual Automobile Insurance Company, Intervenor below, Appellant.**

No. 28481.

Supreme Court of Appeals of West Virginia.

Submitted June 5, 2001.

Decided June 28, 2001.

Dissenting Opinion of Justice Starcher July 10, 2001.

---

Catherine D. Munster, Esq., Tiffany R. Durst, Esq., McNeer, Highland, McMunn & Varner, L.C., Clarksburg, West Virginia, Attorneys for Appellant State Farm Mutual Automobile Insurance Company.

Frank P. Bush, Jr., Esq., Bush & Bush, Elkins, West Virginia, Attorney for the Estate of Anthony Adkins.

PER CURIAM.

In this appeal from the Circuit Court of Summers County, we are asked to determine the enforceability of an exclusion prohibiting the "stacking" of underinsured motorist coverage in two separate insurance policies issued by an insurance company upon two vehicles. The circuit court concluded that

because the insurance company issued two separate policies to the policyholders, such an exclusion could not be enforced and the underinsured motorist coverage in each policy could be stacked.

As set forth below, we reverse the circuit court's ruling. We hold that because the policyholders received a multi-car premium discount on both policies as consideration for the "anti-stacking" exclusion, the coverage cannot be stacked.

## I.

On October 1, 1998, Anthony Adkins was riding as a passenger in a vehicle with several friends. The driver of the vehicle lost control and went left of the center of the road. The vehicle collided head-on with another car, and Mr. Adkins was ejected from the vehicle along with two of his friends, resulting in his death.

The insurance carrier for the driver filed a declaratory judgment action in the circuit court seeking to deposit the limits of the driver's liability insurance policy with the circuit court.[1] Because the limits of the driver's liability insurance policy were clearly less than the damages caused to the Adkins' family, the appellees, Danny and Brenda Adkins, made a claim against their own underinsured motorist insurance carrier, appellant State Farm Mutual Automobile Insurance Company ("State Farm").

The appellees owned two vehicles, and each vehicle was insured with a separate policy from State Farm. The parties agree that Anthony Adkins was covered by both policies. Each policy contained an endorsement for $20,000.00 in coverage against underinsured motorists.

The appellees made a claim to State Farm for underinsured motorist coverage, arguing they were entitled to stack the coverage available under both policies, for a total of

$40,000.00 in coverage. State Farm paid the appellees only $20,000.00, and argued that both policies contained an "anti-stacking" exclusion which limited the coverage available under both policies to a maximum of $20,000.00. The exclusion stated:

> If other underinsured motor vehicle coverage issued by us to you, your spouse, or any relative applies, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

State Farm further argued that the appellees had received a multi-car discount for insuring both cars through State Farm, and that the discount—which was noted on the declarations page of both policies—served as consideration for enforcing the exclusion.

To resolve this dispute, State Farm intervened in the underlying circuit court action and initiated a declaratory judgment action against the appellees to resolve the amount of underinsured motorist coverage available to the appellees through the two policies. The appellees subsequently filed a motion for summary judgment asking the circuit court to declare that they could stack the coverage available under the two policies, for a total of $40,000.00 in coverage.

In an order dated December 7, 1999, the circuit court granted a declaratory judgment to the appellees. The circuit court concluded that State Farm had issued two separate policies to the appellees, and that anti-stacking language is void when a policyholder is covered by two or more underinsured motorist policy endorsements. The circuit court therefore allowed the appellees to stack their two policies together.

State Farm now appeals the circuit court's order.

## II.

■ We review *de novo* the circuit court's declaratory judgment order interpreting the State Farm insurance policy. We

---

1. On December 16, 1998, Dairyland Insurance Company initiated the instant action against the appellee, the estate of Anthony Adkins; against the estate of the driver, Stephen Adkins, who was apparently no relation to Anthony Adkins; against Joyce Fox, the administrator of another person killed by the collision, Ivan Fox, Jr.; against William Haga, a passenger of the vehicle who was allegedly injured; and against Stephen Lowery, the individual who was driving the oncoming car. Dairyland sought to deposit the limits of Stephen Adkins' liability insurance, a total of $40,000.00, into the circuit court for equitable distribution to the various people injured in the collision.

have previously stated that a circuit court's entry of a declaratory judgment is reviewed *de novo,* since the principal purpose of a declaratory judgment action is to resolve legal questions. Syllabus Point 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995). When a declaratory judgment proceeding involves the determination of an issue of fact, that issue may be tried and determined by a judge or jury in the same manner as issues of fact are tried and determined in other civil actions. *W.Va.Code,* 55–13–9 [1941]. Any determinations of fact made by the circuit court or jury in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard. *Cox,* 195 W.Va. at 612, 466 S.E.2d at 463.

■ In this case we are asked to review the circuit court's interpretation of an insurance contract. In *Payne v. Weston,* 195 W.Va. 502, 506–7, 466 S.E.2d 161, 165–66 (1995), we discussed the applicable standard of review in such cases, stating that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal." "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Murray v. State Farm Fire & Cas. Co.,* 203 W.Va. 477, 483, 509 S.E.2d 1, 7 (1998), *quoting Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985).

### III.

In *W.Va.Code,* 33–6–31(b) [1998], the Legislature requires insurance companies to of-fer an individual buying an automobile insurance policy the option to purchase insurance against underinsured motorists. However, the Legislature also, in *W.Va.Code,* 33–6–31(k), authorizes insurance companies to include in each policy "exclusions as may be consistent with the premium charged." [2]

■ In *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (1989), we recognized the Legislature's enactment of *W.Va.Code,* 33–6–31(k), and the effect of the enactment on underinsured motorist insurance policies. We stated, in Syllabus Point 3, that as a result of *W.Va.Code,* 33–6–31(k):

> Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.

Relying upon this authorization, insurance companies began including exclusions in automobile insurance policies to prevent the "stacking" of underinsured motorist coverages on multiple vehicles.

We considered the effect of an "anti-stacking" exclusion on underinsured motorist coverage contained in a policy covering multiple cars in *Russell v. State Automobile Mutual Insurance Co.,* 188 W.Va. 81, 422 S.E.2d 803 (1992). In *Russell,* the exclusion was contained within a single insurance policy that covered two separate vehicles.

---

2. *W.Va.Code,* 33–6–31(k) states:
   Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged.
   In *Mitchell v. Broadnax,* 208 W.Va. 36, 537 S.E.2d 882 (2000), we held that *W.Va.Code,* 33–6–31(k) requires an insurance company to prove that it has adjusted its premiums to reflect the reduction in coverage caused by an exclusion, and that the failure to show such an adjustment will render the exclusion void. We held, in Syllabus Points 5 and 6:
   5. When an insurer incorporates, into a policy of motor vehicle insurance, an exclusion

pursuant to W.Va.Code § 33–6–31(k) (1995) (Repl.Vol.1996), the insurer must adjust the corresponding policy premium so that the exclusion is "consistent with the premium charged."
   6. When an insurer has failed to satisfy the statutory criteria of W.Va.Code § 33–6–31(k) (1995) (Repl.Vol.1996) requisite to incorporating an exclusion in a policy of motor vehicle insurance, the enforcement of such an exclusion is violative of this State's public policy. In the instant case, the appellees did not challenge below, as was discussed in *Mitchell,* whether the State Farm anti-stacking exclusion was "consistent with the premium charged." We therefore decline to consider this issue on appeal.

As in the instant case, the policy in *Russell* provided underinsured motorist coverage for both vehicles of $20,000.00 per person, and the premium for the coverage reflected a multi-car discount for underinsured motorist coverage. The policy also contained anti-stacking language that limited the policy's underinsured motorist coverage to the highest limit applicable for any one vehicle covered by the policy.

■ This Court examined the anti-stacking exclusion and ruled that, when a multi-car discount has been given to a policyholder, the underinsured motorist coverage in a policy cannot be stacked. The Court stated, in Syllabus Point 5 of *Russell:*

> West Virginia Code § 33–6–31 (1992) does not forbid the inclusion and application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by a single insurer and contains an underinsured endorsement even though the policy covers two or more vehicles. Under the terms of such a policy, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

The Court concluded that because the policyholder had received the benefit of their bargain—a multi-car discount—that the policyholder was not entitled to stack multiple insurance coverages in light of a clear exclusion prohibiting stacking.

■ In the instant case, State Farm argues that, like in *Russell,* the appellee-policyholders received the benefit of their bargain—a multi-car discount—and that clear anti-stacking language contained in both State Farm policies should be enforced to prevent the stacking of the underinsured motorist coverages.

The appellees, however, argue that *Russell* applies only to instances where the policyholder buys one insurance policy that covers multiple vehicles, and receives a multi-car discount. The appellees point out that, in the instant case, State Farm sold the policyholders two separate policies for their two vehicles. The policies have different policy numbers and different renewal dates. How-

ever, the declarations pages for both policies have a notation that a multi-car discount has been given and that the discount applies to underinsured motorist coverage. Still, the appellees argue that *Russell* is inapplicable.

State Farm counters that in 1995, the Legislature revised the underinsured motorist insurance statutes to expand the application of *Russell.* State Farm argues that the statute stretched the application of *Russell* from a single insurance company selling a single policy that covers multiple vehicles, to situations such as the instant case where a single insurance company sells multiple policies to the same policyholders covering different vehicles. *W.Va.Code,* 33–6–31(b) now states, in part, with the 1995 amendment:

> Regardless of whether motor vehicle coverage is offered and provided to an insured through a multiple vehicle insurance policy or contract, or in separate single vehicle insurance policies or contracts, no insurer or insurance company providing a bargained for discount for multiple motor vehicles with respect to underinsured motor vehicle coverage shall be treated differently from any other insurer or insurance company utilizing a single insurance policy or contract for multiple covered vehicles for purposes of determining the total amount of coverage available to an insured.

State Farm argues that even though its underinsured motorist coverage was provided to the appellees in two "separate single vehicle insurance policies," it provided the appellees with a "discount for multiple motor vehicles," and therefore argues it is entitled, under *W.Va.Code,* 33–6–31(b), to be treated no differently than an insurance company utilizing a single insurance policy to cover multiple vehicles. We agree.

Accordingly, we hold that the anti-stacking exclusion contained in the State Farm policies is enforceable in the underinsured motorist insurance policies purchased by the appellees. Applying the clear language of the State Farm policy, the appellees are entitled to recover the limits of "the policy with the highest limit of liability"—that is, $20,000.00. We therefore find that the circuit court erred in its holding that the appel-

lees were entitled to stack the coverages available under their two insurance policies.

## IV.

The circuit court's December 7, 1999 order is reversed, and the case is remanded for further proceedings.

Reversed and Remanded.

STARCHER, Justice, dissenting.

(Filed July 10, 2001)

The majority opinion is yet another in a line of cases that (a) gives insurance law a convoluted, counter-intuitive interpretation that only insurance companies can understand and enjoy; and (b) interferes with the Legislature's beneficent public policy of making sure that people who buy insurance have full coverage for their losses. I therefore dissent.

In the instant case, the policyholders bought two policies on two cars. They paid premiums on a "per-vehicle" basis. Yet State Farm now wants to pay benefits on a "per-person" basis, pointing to an exclusion which prohibits stacking the coverage bought on each vehicle.

An argument I hear repeatedly to support such practices is that insurance companies are struggling to comply with our State's laws, and simply can't profitably survive with this Court's interpretation of those laws. The argument is always posed that the decisions of this Court are going to bankrupt insurance companies.

I have one response: hogwash. In its *2000 Annual Report To State Farm Mutual Policyholders,* State Farm made it patently clear that it can make a hefty profit from selling insurance policies. The report, available on the Internet at *www.statefarm.com,* indicates that State Farm has roughly $78 billion—that's billion, with a "b"—dollars worth of assets. By any assessment, this company is a financial monster.

On the surface, to the uninformed, it looks like selling insurance is a losing business proposition. In the year 2000, State Farm pulled in $24.234 billion in premiums, but paid out $27.540 billion on claims and costs— an underwriting loss of $3.306 billion. (Only $18.227 billion actually went to pay claims—

the rest went into expenses and "administrative fees.")

Digging a little deeper into the annual report, however, makes it clear that selling insurance is a big-money-making proposition. State Farm was able to invest its policyholder premiums, and pull in substantial amounts of money by doing nothing. State Farm's policyholders floated the company $24.234 billion in cash which the company invested, returning the company $5.372 billion in income.

After paying all of its debts and its income taxes, State Farm was able to walk away with $1.691 billion dollars—a 6% return. Think about that: State Farm made a 6% return using somebody else's money. Because State Farm is a mutual, technically owned by its policyholders, it gave a billion dollars back to its policyholders as a "dividend" and pocketed the remaining $684 million.

I applaud State Farm's ability to make money using someone else's money. But as I set forth below, the company should be forced to make a profit while complying with the letter of our law—not its own, freewheeling interpretation.

## I.

*Having their cake ... and eating it, too*

The majority opinion, as well as *Russell v. State Automobile Mutual Insurance Co.,* 188 W.Va. 81, 422 S.E.2d 803 (1992) and its other progeny, are fundamentally flawed because they ignore the statutory basis for un- and under-insured motorist coverage. Because this Court chooses to ignore the statutory basis for the coverage, insurance companies also continue to ignore the statutory basis, and make a ton of money in the confusion.

What I mean is this: the Legislature requires that (a) each automobile insurance policy contain (b) un- and under-insured motorist coverage for each *person* insured by the policy. However, based upon this Court's opinions, insurance companies like State Farm make (a) each automobile insurance policy contain (b) un- and under-insured motorist coverage for each *vehicle* insured by

the policy, but (c) only pay benefits to each *person* insured by the policy.

In other words, insurance companies charge premiums on a per-car basis, but pay claims on a per-person basis. They ignore the law when it comes to taking money, and follow the law when it comes to paying it out, and make a tidy profit on the difference.

In the instant case, State Farm sold two separate insurance policies on two separate cars. The policyholders paid premiums on *each vehicle.* State Farm did give the policyholders a "multi-car discount"—a whopping $1.21 for every 6 months worth of coverage on each car. When the policyholders tried to collect the coverage available under both policies, State Farm only paid the maximum amount available under one policy—$20,000 *per person.* State Farm got its money on a per-vehicle basis, but paid out policy proceeds on a per-person basis.

West Virginia law requires every insurance company, in every automobile insurance policy, to include uninsured motorist coverage. The law also requires every insurance company to offer the consumer the right to purchase underinsured motorist coverage. Un- and under-insured motorist coverage is not designed to protect the automobile—it is specifically designed to protect responsible insurance consumers, their families, and their passengers.

*W.Va.Code,* 33–6–31(b) requires every insurance policy to contain coverage "to pay *the insured* all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle[.]" (Emphasis added.) The statute also requires every insurance policy to contain an option for the policyholder to purchase coverage "to pay *the insured* all sums which he shall be legally entitled to recover as damages from the owner or operator of an . . . underinsured motor vehicle[.]" (Emphasis added.)

The term "insured" is defined by *W.Va. Code,* 33–6–31(c) in the following manner (with emphasis added):

As used in this section, . . . the term "insured" shall mean the named insured and, while resident of the same household,

the spouse of any such named insured and relatives of either, while *in a motor vehicle or otherwise,* and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies or the personal representative of any of the above[.]

*W.Va.Code,* 33–6–31(b) and (c), read together, requires the insurance company to provide un- and under-insured motorist coverage, not for each motor vehicle owned by the named insured, but instead for the "named insured," his or her resident spouse, and the relatives of either who reside in their household, while "in a motor vehicle or otherwise."

The statute is not intended to bolster the profits of an insurance company by requiring coverage—and therefore, premiums be paid—for each vehicle. The Legislature could have tied un- and under-insured motorist coverage in all instances to the vehicle insured under the automobile policy; it did not, and instead chose to tie coverage to the named insured, his or her spouse, and their relatives residing in their household, whether in a motor vehicle—any motor vehicle—or otherwise.

Somehow, this Court has overlooked *W.Va. Code,* 33–6–31(c), and repeatedly allowed insurance companies to require policyholders to pay for coverage on a "per vehicle" basis (with, of course, a "multi-car discount"). Then, when the policyholder needs to use the coverage, the insurance company points to language in the policy prohibiting stacking—in essence, contractually limiting the coverage to a once-per-person form of coverage. The policyholder pays premiums for multiple cars, but only gets one coverage per person insured.

When the Legislature added un- and underinsured motorist coverage to *W.Va.Code,* 33–6–31(b), it created a simple-to-understand public policy of full indemnification: "the preeminent public policy of this state in uninsured or underinsured motorist cases is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage." *State Auto. Mut. Ins. Co. v. Youler,*

183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990).

This Court bluntly stated in *Youler* that "[a]ntistacking language in an automobile insurance policy which is applicable purportedly to uninsured or underinsured motorist coverage strikes at the heart of the purpose of the uninsured and underinsured motorist statute and conflicts with the spirit and intent of such statute, in that antistacking language thwarts the statutorily stated public policy of full indemnification." 183 W.Va. at 564–565, 396 S.E.2d at 745–746.

Somehow, in *Russell v. State Auto* and its progeny (including the majority opinion), this fundamental principle has been overlooked. The result is that policyholders buy un- and under-insured motorist coverage on each car they own—but are then limited to only one coverage per injured person.

In the instant case, I would have ruled that the anti-stacking language in the State Farm policy was void. I would also have adopted a syllabus point[1] which would roughly state that:

> *W.Va.Code*, 33–6–31(b) and (c), when read *in pari materia*, require insurance companies to provide, in each automobile insurance policy, uninsured and underinsured motorist coverage that will pay benefits to "insureds." If an insurance company requires a policyholder to buy uninsured or underinsured motorist coverage and pay premiums on a "per-vehicle" basis rather than a "per-insureds" basis, an anti-stacking provision in the policy is void and unenforceable, and each "insured" should be permitted to recover the maximum coverage available for each vehicle.

Insurance companies should be compelled to abide by the terms of *W.Va.Code*, 33–6–31—either provide coverage to "insureds" as defined by *W.Va.Code*, 33–6–31(c) and charge premiums accordingly; or provide coverage (through multiple policies) for each vehicle and charge premiums accordingly. This Court should not allow insurance companies to mix the coverages and premiums.

II.

*Insurance companies improperly avoid their statutory obligations through exclusions*

This Court has repeatedly held that insurance companies are statutorily required, in every single automobile insurance policy that they sell, to offer the insurance consumer the ability to purchase uninsured and underinsured motorist coverage with limits up to or equal to the limits of liability coverage bought by the consumer. It makes no sense to say that the insurance company is required by law to offer particular levels of coverage—but then say the insurance company can riddle that coverage with so many exclusions that the coverage is illusory. The anti-stacking exclusion at issue in this case attempts to limit coverage to less than the amount which an insurance company is required to offer under West Virginia law, and should have been declared void and unenforceable.

*W.Va.Code*, 33–6–31(b) states, in pertinent part, that within an automobile insurance policy an insurance company:

> ... shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

We have repeatedly construed this language to mean that an insurance company is required to offer an insurance consumer the right to purchase an amount of uninsured motorist coverage, in every automobile insurance policy, equal to the level of liability coverage. This is a mandatory requirement—it is not an option on the part of the insurance company.

In *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), we inter-

---

1. As a sidenote, attorneys should always raise and fully brief issues such as these before circuit courts, to preserve the issues for appeal. Furthermore, on appeal, a powerful tool of advocacy is to suggest, with appropriate legal support, how this Court should phrase syllabus points.

preted this clause in *W.Va.Code*, 33–6–31(b) to mean that an ability to purchase a higher limit of uninsured motorist coverage "*shall* be offered [to the consumer], and this [statutory] language must be afforded a mandatory connotation." 179 W.Va. at 127, 365 S.E.2d at 791. The insurance company *must* offer the coverage; the insurance consumer then has the option to purchase that coverage. We went on to hold, at Syllabus Point 1, that

Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed.

In *Riffle v. State Farm Mut. Auto. Ins. Co.*, 186 W.Va. 54, 410 S.E.2d 413 (1991), we made clear that if an insurance company fails to make an effective offer of the level of un- or underinsured motorist coverage required by *W.Va.Code*, 33–6–31(b), then under *Bias* that level of insurance will be read into the policy. As we stated in Syllabus Point 2, "when an insurer fails to prove an effective offer and a knowing and intelligent waiver by the insured, the insurer must provide the minimum coverage required to be offered under the statute." We held in *Riffle* that, in the absence of a proper offer, the minimum amount of uninsured and underinsured motorist coverage that an insurance company will be required to provide under the statute is " 'an amount not less than the limits of *bodily injury liability insurance and property damage liability insurance.*' " 186 W.Va. at 55, 410 S.E.2d at 414.

The Legislature has even given insurance companies a way to make the offer of coverage, and requires that a written form—approved by the insurance commissioner—be sent to policyholders telling them the various amounts of un- and under underinsured motorist coverage they can buy, and the premiums for those various coverages. *W.Va. Code*, 33–6–31d [1993].[2] *See also, Westfield Ins. Co. v. Bell*, 203 W.Va. 305, 507 S.E.2d 406 (1998) (*per curiam*).

I am bothered by the majority opinion in the instant case because *Bias* holds that an insurance company *must* offer a certain amount of un- and under-insured motorist coverage. If the insurance company fails to make a commercially reasonable offer of coverage, then un- and under-insured motorist coverage in an amount equal to the amount of liability coverage is automatically read into the policy. Contrary to this rule, *Russell v. State Auto* tells insurance companies they can meet their statutory obligation by offering un- and under-insured motorist coverage in every automobile insurance policy with limits equal to the level of liability coverage—but can condition and limit that coverage by including numerous exceptions, so long as the insurance consumer is only asked to pay "appropriately adjusted premiums."

This contradiction undermines the Legislature's goal of fully protecting responsible citizens and their families and guests from irresponsible, un- and under-insured motorists. The Legislature could not have intended to require an insurance company to offer un- and under-insured motorist coverage, and then allowed the insurance company to void that coverage through the use of exclusions.

I agree that when a consumer purchases an automobile insurance policy, under *W.Va. Code*, 33–6–31(b), the insurance company is required to offer the consumer the ability to purchase un- and under-insured motorist coverage in an amount up to the level of bodily injury liability insurance and property damage liability insurance purchased by the consumer. But any attempt to limit the amount of uninsured or underinsured motorist coverage purchased by the consumer pursuant to *W.Va.Code*, 33–6–31(b) should be void as against public policy.

### III.

*The majority opinion misunderstands W.Va.Code, 33–6–31(k)*

The majority opinion, as did the Court in Syllabus Point 3 of *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989), misunderstands *W.Va.Code*, 33–6–31(k). This subsection states:

---

**2.** A reading of this statute raises the obvious question: if an insurance company must offer un- and under-insured motorist coverage and the price for that coverage on a simple-to-read form, in writing, then why can't an insurance company also describe policy exclusions and their effect on the price of coverage on a simple-to-read form, in writing?

Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged.

The first clause of subsection (k) permits insurance companies to "offer[ ] benefits and limits other than those prescribed [in *W.Va. Code*, 33–6–31]." This language obviously permits an automobile insurer to "offer" any type of coverage (together with particular limits to that coverage) that it chooses. Under this statute, an insurance company can offer—in *addition* to the un- and underinsured coverage required by subsection (b) of the statute—other forms of coverage (*e.g.*, towing coverage, comprehensive and collision coverage, travel insurance, *etc.*).

As Justice W. McGraw once deftly noted, the "more crucial question in interpreting subsection (k)" is how the second clause of subsection (k) should be construed. *Mitchell v. Broadnax*, 208 W.Va. 36, 61, 537 S.E.2d 882, 907 (2000) (McGraw, J., concurring in part and dissenting in part). Subsection (k) has been relied upon by insurance companies—including State Farm in the instant case—for the proposition in the second clause that an insurance company can "incorporat[e] *in* such terms, conditions and exclusions as may be consistent with the premium charged." (Emphasis added.)

Justice McGraw examined the language chosen by the Legislature, and concluded that the *Deel* Court had misquoted the second clause—and by dropping one word from the statute, the word "in," had given the statute a flawed interpretation.[3] He argued for the following interpretation:

Although not a model of textual clarity, the word "in" was plainly intended to be synonymous with "therein," which in effect limits the second clause to the subject of the first. Subsection (k) therefore merely permits an insurer to impose "terms, conditions and exclusions" upon "benefits and limits other than those prescribed herein." In other words, the statute allows an insurer to impose limitations or exclusions on offerings that are otherwise not specified in the statute. There is simply nothing in this language that could, by any stretch of the imagination, be construed to permit an insurance company to corrupt or curtail the coverages specifically prescribed in subsection (b), regardless of whether those coverages are mandatory or optional to the policyholder.

The construction of subsection (k) that I put forward here is certainly no less plausible than that placed upon it by *Deel* and its progeny. As the Court stated in syllabus point 7 of *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986), "[t]he uninsured motorist statute, West Virginia Code Sec. 33–6–31 (Supp.1986), is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." Consequently, to the extent there is any ambiguity in subsection (k), the statute must be construed in favor of securing for automobile insurance consumers the opportunity to obtain the optional coverages specified in subsection (b) without the inclusion of "terms, conditions and exclusions" that otherwise conflict with the statute.

208 W.Va. at 61, 537 S.E.2d at 907. I agree with Justice McGraw's interpretation of *W.Va.Code*, 33–6–31(k).

I therefore believe that *W.Va.Code*, 33–6–31(k) should be interpreted to mean that an

---

**3.** *See Deel*, 181 W.Va. at 463, 383 S.E.2d at 95, where the Court misquoted the statute in the following manner:

(k) Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating such terms, conditions and *exclusions* as may be consistent with the premium charged.

By dropping the phrase "incorporating in," the result was a syllabus point which did not connect

the second clause of subsection (k) with the first, leaving it to stand alone as a principle of law:

Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.

Syllabus Point 3, *Deel v. Sweeney*.

insurance company may offer coverages other than those prescribed by *W.Va.Code*, 33–6–31, and may "incorporate therein"—meaning incorporate into coverages other than those prescribed—such terms, conditions and exclusions as may be consistent with the premium charged. Accordingly, Syllabus Point 3 of *Deel v. Sweeney* and its progeny should be overruled.

## IV

### Conclusion

I firmly believe that, in the instant case, the Adkins' family bought two separate underinsured motorist insurance policies on two vehicles. The simple fact is, they thought they were buying two policies with a total of $40,000.00 in coverage.

I believe that, under our laws, State Farm chose to sell the Adkins two policies, and chose to make them pay premiums on a "per vehicle" basis. I therefore believe that State Farm should have paid out its benefits on a "per vehicle" basis as well. State Farm chose to avoid the law by not providing coverage on a "per insured" person basis; State Farm should face the consequences of its decision.

I therefore respectfully dissent.

I am authorized to state that Chief Justice McGRAW joins in this dissent.