**Darla George INGLES, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

No. CIV.A.2:02–0033.

United States District Court,
S.D. West Virginia,
Charleston Division.

Aug. 7, 2003.

Barry L. Bruce, Barry L. Bruce & Associates, Lewisburg, WV, for Plaintiff.

Charles S. Piccirillo, Kelly R. Charnock, Shaffer & Shaffer, Madison, WV, for Defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Pending is Plaintiff's renewed motion for summary judgment on a single issue remaining for disposition in this action. The Court **DENIES** the motion and **ORDERS** the case **DISMISSED** and **STRICKEN** from the docket.

## I. FACTUAL BACKGROUND

Plaintiff Darla George Ingles instituted this action against State Farm Mutual Automobile Insurance Company ("State Farm"). The action stems from an automobile accident of December 14, 1999. While traveling north on U.S. Route 219 near Maxwelton, Plaintiff was injured by Frances M. McKinney, whose automobile crossed the center line and struck Plaintiff's.

As a proximate result of the accident, Plaintiff incurred medical expenses of $67,000.00. She also received permanent disability ratings of her lower left and right extremities of 21% and 7% respectively.

Plaintiff collected the per-person liability policy limits of $100,000 from McKinney's insurer. State Farm consented to the settlement and waived subrogation. On the accident date, Plaintiff's vehicle, a 1997 Saturn, was insured under a State Farm automobile policy initially purchased April 19, 1996.

In September 2000, State Farm paid Plaintiff the $20,000.00 coverage limits due under her policy. Plaintiff accepted payment, while reserving her right to pursue an action seeking additional monies under her own policy and more extensive coverage through stacking underinsured benefits available under two other State Farm policies issued to her parents, Richard and Kimberly George. Those policies contained underinsured motor vehicle coverage limits of $100,000 per person/$300,000 per occurrence.

On August 16, 1995 State Farm submitted a form filing to the West Virginia Insurance Commissioner incorporating anti-stacking language and other provisions through Amendatory Endorsement 6090 AQ. The filing was approved for use in West Virginia on or after August 30, 1995.

Plaintiff initially complained State Farm unilaterally, without any bargaining between the parties, effected a multiple vehicle discount for underinsurance coverage of 10% effective January 1, 1996 and without prior approval from the Commissioner. She also asserted neither she nor her parents ever had the opportunity to bargain for the discount and, in fact, did not request the discount, nor had it explained to them.

█ The parties earlier filed cross motions for summary judgment on these and other issues. The Court granted summary judgment to Defendant on the issues of (1) whether Plaintiff received a commercially reasonable offer to purchase underinsurance coverage, and (2) whether Plaintiff could stack her underinsured coverage with like coverages available under her parents' policies.[1] The Court ordered additional briefing on one remaining question, namely whether Plaintiff was entitled to the highest underinsured coverage available under either her policy or one of her parents' policies. That issue is now ripe for determination.

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

1. When express, legal authority is available, the Court's task is to simply apply the law of West Virginia as previously articulated either by statute or by the Supreme Court of Appeals of West Virginia. *Nature Conservancy v. Machipongo Club, Inc.*, 579 F.2d 873, 875 (4th Cir.1978); *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where such express authority is lacking, however, as in the instant case, the Court is required to predict the law that would be applied by the Supreme Court of Appeals. *Id.* The Court endeavored to discharge this re-

sponsibility in resolving three subissues previously. Those rulings related to (1) the bargained-for nature of the discount in this case; (2) whether the discount given was adjusted appropriately in light of the coverage lost as a result of the discount; and (3) whether the discounting process amounted to a contract of adhesion. In a decision issued just one month after this Court's earlier, published opinion, the Supreme Court of Appeals reached the same result on all three subissues. *See Joslin v. Mitchell*, No. 31035, 213 W. Va. 771, 584 S.E.2d 913, ——, 2003 WL 21518129, at *—— (Jul. 3, 2003).

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

### B. Entitlement to the Highest Available Underinsurance Coverage

Long-settled West Virginia law provides "Where the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Tackett v. American Motorists Ins. Co.,* No. 30633, 213 W. Va. 524, 584 S.E.2d 158, ——, 2003 WL 1089306, at *—— (Feb. 28, 2003); Syl. pt. 3, *American States Ins. Co. v. Tanner,* 211 W.Va. 160, ——, 563 S.E.2d 825, 827 (2002); Syl. pt. 1, *Russell v. State Automobile Mutual Insurance Co.,* 188 W.Va. 81, 81, 422 S.E.2d 803, 803 (1992); Syllabus, *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 813, 172 S.E.2d 714, 714 (1970).

■ The applicable language quoted by the parties is found in separate provisions of Amendatory Endorsement 6090 AQ. Plaintiff relies upon the following language found in Section 2(b)(1):

### If There Is Other Coverage—Coverage W

1. If other underinsured motor vehicle coverage issued by us to *you, your spouse,* or any *relative* applies, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

(Ex. A, Aff. of Diane Novinsky ¶ 2(b)(1).) Although Defendant concurs Plaintiff qualifies as an insured under her parents' policies, it asserts the "other underinsured motor vehicle coverage issued by" it to Plaintiff and her parents does not "appl[y]" in this instance. Defendant relies upon the following policy exclusion immediately preceding the language quoted by Plaintiff:

THERE IS NO COVERAGE UNDER COVERAGE W:

1. FOR *BODILY INJURY* TO AN *INSURED*

   a. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED BY *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS:

   .      .      .      .      .

   (2) INSURED FOR UNDER–INSURED MOTOR VEHICLE COVERAGE UNDER ANOTHER POLICY ISSUED BY US. This does not apply to *your car* [.]

(*Id.* ¶ 2.a.1 (emphasis in original).)

If this exclusion applies, the Paragraph 2(b)(1) provision concerning the "other underinsured motor vehicle coverage issued by" Defendant, namely the parents' coverage, would be inapplicable to Plaintiff. Close scrutiny of the exclusion is thus warranted.

Given the injuries suffered by Plaintiff, and her insured status under all three policies, a *"BODILY INJURY* TO AN *INSURED"* occurred. Further, Plaintiff sustained the injuries while *"OCCUPYING* [a] MOTOR VEHICLE OWNED

BY" her at the time. Finally, she was at the time "INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE UNDER ANOTHER POLICY ISSUED BY" Defendant, namely her own policy, separate and apart from her parents'. She received the coverage due her under her policy, consistent with the final sentence in the exclusion. *"[Y]our car"* is defined in all the policies as "the *car* or the vehicle described on the declarations page." (*See, e.g.,* Ex. A, Def.'s Mot. Summ. J. at 4.) Only Plaintiff's policy declarations page mentions the 1997 Saturn involved in the accident. The automobile appears on neither declarations page issued on the parents' policies.

The underlying facts of this case bring it within the unambiguous, four corners of the exclusion. Accordingly, Plaintiff is not entitled to the higher limits available under her parents' policies. The Court **DENIES** Plaintiff's renewed motion for summary judgment on this issue. This action is **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record. A copy of this Opinion has been posted on the Court's website at www.wvsd.uscourts.gov.

### JUDGMENT ORDER

In accordance with the Memorandum Opinion and Order entered today, the Court **ORDERS** as follows:

1. The Court **DENIES** Plaintiff's renewed motion for summary judgment; and

2. This action is **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Judgment Order to counsel of record.