632 S.E.2d 346

**Carolyn JENKINS, Administratrix of the Estate of Roy L. Jenkins, Deceased Plaintiff Below, Appellant**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant Below, Appellee.**

No. 32895.

Supreme Court of Appeals of West Virginia.

Submitted March 28, 2006.

Decided May 18, 2006.

Dissenting Opinion of Justice Starcher July 11, 2006.

**192**

Richard E. Hardison, Jr., Esq., Beckley, Attorney for Appellant.

Anthony J. Cicconi, Esq., Charleston, Attorney for Appellee.

PER CURIAM:

In the instant case, the appellant, Carolyn Jenkins, Administratrix of the Estate of Roy L. Jenkins, deceased, appeals an order of the Circuit Court of Wayne County dated May 31, 2005, denying her motion for summary judgment and granting summary judgment in favor of the appellee, State Farm Mutual Automobile Insurance Company (hereinafter, "State Farm"). This case arose out of an automobile accident that resulted in the death of Roy Jenkins. In her complaint, Ms. Jenkins, the wife of the decedent, asserted that Mr. Jenkins' estate was entitled to $100,000 pursuant to an underinsured motor vehicle policy issued to her by State Farm. However, the circuit court found that exclusionary language in the policy clearly limited the estate's recovery to $25,000 pursuant to the underinsured motor vehicle policy attached to the vehicle driven by Mr. Jenkins when the accident occurred.

In this appeal, Ms. Jenkins contends that the circuit court erred by granting summary judgment to State Farm. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court affirms the decision of the circuit court.

## I.

### FACTS

On July 3, 2003, Roy L. Jenkins was operating a 1990 Nissan truck owned by his mother, Yantes Belcher, on Interstate 64 in Wayne County, West Virginia. His vehicle was struck by a 1995 Chevrolet Camaro owned by Thomas Holbrook which was operated by Joshua M. Holbrook. Mr. Jenkins died from the injuries he sustained in the accident.

Following the accident, Allstate Insurance Company, the insurer of the Holbrook vehicle, agreed to pay Carolyn Jenkins, the appellant and decedent's wife, the $50,000 bodily injury liability limits which covered the Holbrook vehicle. The agreement included the consent and waiver of subrogation by State Farm. Thereafter, Ms. Jenkins made a claim for underinsured motor vehicle coverage.

The vehicle driven by Mr. Jenkins when the accident occurred was insured by a policy issued by State Farm which contained an underinsured motor vehicle coverage limit of $25,000 per person. In addition to Ms. Belcher's insurance policy, Ms. Jenkins had a 1996 Pontiac Sunfire insured with State Farm with underinsured motor vehicle coverage limits in the amount of $100,000 per person. Moreover, Donnie Jenkins, Mr. Jenkins' son, had a 1994 Ford Escort insured with State Farm which had underinsured motor vehicle coverage limits in the amount of $25,000 per person. Donnie Jenkins also had a 1997 Ford Crown Victoria insured with State Farm with underinsured motor vehicle coverage limits in the amount of $25,000 per person. Each of these four policies listed the named insureds as Ms. Jenkins, Mr. Jenkins, Donnie Jenkins, and Ms. Belcher. These policies also stated that these four people were living at the same address resulting in each of the policies including a multi-car discount. In consideration for the multi-car discount, each policy contained language limiting the applicability of the underinsured motor vehicle policies.

Ms. Jenkins filed suit contending that the estate should receive $100,000, the highest coverage limit of the policies described

above. In support of her argument, Ms. Jenkins relied upon the following language from her insurance policy:

If there is other coverage—Coverage W

1. If underinsurance motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, *persons* covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

In response, State Farm argued that the underinsured motor vehicle coverage was limited to $25,000 based upon the following language in the policy:

When Coverage Does Not Apply

. . .

Coverage W

THERE IS NO COVERAGE UNDER COVERAGE W:

1. FOR *BODILY INJURY* TO AN *INSURED:*

　a. WHILE *OCCUPYING* OR OTHERWISE USING A MOTOR–VEHICLE OWNED OR LEASED TO *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS:

　(2) INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE UNDER ANOTHER POLICY ISSUED BY US.

On September 30, 2004, Ms. Jenkins filed a motion for summary judgment. Upon review, the circuit court determined that the policy language was clear and unambiguous. The court found that the only underinsured motor vehicle coverage available was that provided by the policy on the Belcher vehicle that Mr. Jenkins was operating at the time of the accident. Accordingly, the circuit court denied Ms. Jenkins' motion for summary judgment and granted summary judgment to State Farm. This appeal followed.

## II.

## STANDARD OF REVIEW

Ms. Jenkins contends that the circuit court erred in granting summary judgment to State Farm. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

The instant appeal requires this Court to review the terms of the insurance policy at issue herein. Generally, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syllabus Point 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). Moreover, "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal." Syllabus Point 2, *Riffe v. Home Finders Associates., Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999). *See also* Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these standards in mind, we proceed to consider Ms. Jenkins' arguments.

## III.

## DISCUSSION

The appellant, Ms. Jenkins, argues that the circuit court erred in denying her motion

for summary judgment and granting summary judgment in favor of the appellee, State Farm. Ms. Jenkins contends that the language in her State Farm policy is inconsistent and ambiguous. She notes that this Court has held that "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree to its meaning, it is ambiguous." Syllabus Point 1, *Prete v. Merchants Property Ins. Co. of Indiana*, 159 W.Va. 508, 223 S.E.2d 441 (1976).

Ms. Jenkins points out that in *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988), we provided,

At the outset we set forth a few general principles, also set forth by this Court in *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986). First, any ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer. This principle applies to policy language on the insurer's duty to defend the insured, as well as to policy language on the insurer's duty to pay.

Likewise, "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syllabus Point 5, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). *Accord American States Ins. Co. v. Tanner*, 211 W.Va. 160, 165, 563 S.E.2d 825, 830 (2002); Syllabus Point 4, *Russell v. Bush & Burchett, Inc.*, 210 W.Va. 699, 559 S.E.2d 36 (2001). For this reason, then, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." Syllabus Point 7, *Id.*

Ms. Jenkins further argues that this Court's holding in *Dairyland Insurance Co. v. Fox*, 209 W.Va. 598, 550 S.E.2d 388 (2001), is applicable wherein we held that "applying the clear language of the State Farm policy, the appellees are entitled to recover the limits of 'the policy with the highest limit of liability.'" Ms. Jenkins points out that in this case, the highest limit of liability for underinsurance coverage was $100,000 for the policy issued to Ms. Jenkins. She maintains that by prohibiting her from recovering under the policy with the highest limit of liability, State Farm is benefitting from the anti-stacking and exclusionary language of its policy without providing any additional consideration even though it receives higher premiums from the policyholder. She further contends that any attempt to limit the amount of uninsured or underinsured motorist coverage purchased by the consumer should be void as against public policy pursuant to West Virginia Code § 33–6–31(b) (1998), which requires every insurance policy to contain an option for the policyholder to purchase coverage "to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an ... underinsured motor vehicle ..." *See Dairyland*, 209 W.Va. at 604, 550 S.E.2d at 394.

State Farm responds that the circuit court correctly determined that the language of its insurance policy was clear and without ambiguity. It maintains that the issue presented in this case was decided by the Federal District Court for the Southern District of West Virginia. We agree.

In *Ingles v. State Farm Mutual Automobile Insurance Company*, 275 F.Supp.2d 755 (S.D.W.Va.2003), the plaintiff was injured by an underinsured motor vehicle. She accepted the liability limits and the $20,000 in underinsured motor vehicle coverage that was on the vehicle she was driving at the time of the accident. She reserved, however, the right to litigate the issue of whether she was entitled to the $100,000 underinsured coverage on her parents' car with whom she resided. She relied on the same policy language that Ms. Jenkins relied on in this case. Moreover, State Farm relied upon the same exclusionary language at issue in this case when it argued that the plaintiff's parents' policy did not apply.

The District Court found that:

Given the injuries suffered by Plaintiff, and her insured status under all three policies, a "*BODILY INJURY TO AN IN-*

*SURED"* occurred. Further, Plaintiff sustained the injuries while *"OCCUPYING* [a] MOTOR VEHICLE OWNED BY" her at the time. Finally, she was at the time "INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE UNDER ANOTHER POLICY ISSUED BY" Defendant, namely her own policy, separate and apart from her parents'. She received the coverage due her under her policy, consistent with the final sentence in the exclusion. *"[Y]our car"* is defined in all the policies as "the *car* or the vehicle described on the declarations page." *(See, e.g.,* Ex. A, Def.'s Mot. Summ. J. at 4.) Only Plaintiff's policy declarations page mentions the 1997 Saturn involved in the accident. The automobile appears on neither declarations page issued on the parents' policies.

The underlying facts of this case bring it within the unambiguous, four corners of the exclusion. Accordingly, Plaintiff is not entitled to the higher limits available under her parents' policies. The Court DENIES Plaintiff's renewed motion for summary judgment on this issue.

275 F.Supp.2d at 759. The District Court denied the plaintiff's motion for summary judgment and ordered the case stricken from its docket.

 In the case at hand, we find *Ingles* persuasive and therefore believe that the circuit court correctly determined that the language of the relevant policies in the present litigation was clear and unambiguous. This Court has held in Syllabus Point 2 of *Russell v. State Auto. Mut. Insurance Co.,* 188 W.Va. 81, 422 S.E.2d 803 (1992), that "[l]anguage in an insurance policy should be given its plain, ordinary meaning. Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.,* 176 W.Va. 430, 345 S.E.2d 33 (1986)." Therefore, " " '[w]here the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' " " Syllabus Point 3, *American States Ins. Co. v. Tanner,* 211 W.Va. 160, 563 S.E.2d 825 (2002) (citations omitted). It is only when policy language is ambiguous that the insured is entitled to a liberal reading of the policy. *See, e.g.,* Syllabus Point 4, *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.,* 210 W.Va. 223, 557 S.E.2d 277 (2001) ( " ' "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987).' Syllabus point 4, *Riffe v. Home Finders Associates[, Inc.],* 205 W.Va. 216, 517 S.E.2d 313 (1999).").

In this case, Mr. Jenkins was driving his mother's vehicle at the time of the accident. That vehicle was insured by a policy issued by State Farm which contained an underinsured motor vehicle coverage limit of $25,000 per person. The policy also contained language limiting the applicability of the underinsured motor vehicle policies due to a multi-car discount received by Ms. Belcher, Ms. Jenkins, Mr. Jenkins, and Donnie Belcher. Since Mr. Jenkins was *"occupying* or otherwise using a motor-vehicle owned or leased to . . . any *relative* [which was] insured for underinsured motor vehicle coverage under another policy issued by [State Farm]," the circuit court properly determined that Ms. Jenkins' recovery was limited to the $25,000 amount as prescribed by Ms. Belcher's policy.

Contrary to Ms. Jenkins' assertion, *Dairyland* is not on point and clearly distinguishable from the facts of this case. In *Dairyland,* the plaintiff was riding as a passenger with several friends in a vehicle insured by Dairyland. He was not using a vehicle owned by a relative and insured by the appellee as are the facts in the present case. Because the plaintiff in *Dairyland* was not using a vehicle owned by a relative and insured by the appellee when the accident happened, both underinsured motor vehicle policies held by his parents applied in that case. If one of the policies had been for a greater amount, the policy with the greater amount would have had to have been paid. Moreover, since the plaintiff was a friend in a Dairyland vehicle and not in a relative's vehicle insured by the appellee, the language limiting coverage while "using a motor vehi-

cle owned by . . . you, your spouse or any relative if it is . . . insured for underinsured motor vehicle coverage under another policy issued by [State Farm]" was not an issue or even relevant.

▮▮▮▮ We also find no merit to Ms. Jenkins' contention that the doctrine of reasonable expectations applies in this case. The doctrine of reasonable expectations provides that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of policy provisions would have negated those expectations. *See National Mutual Insurance Company v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), disapproved of on other grounds by *Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998). Ms. Jenkins believes that the reasonable expectations doctrine operates as a principle of equity as much as a rule of interpretation and where ambiguous policy provisions would largely nullify the purpose of indemnifying the insured, the application of those provisions will be severely restricted. However, generally, "[i]n West Virginia, the doctrine of reasonable expectations is limited to those instances . . . in which the policy language is ambiguous." *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 742, 356 S.E.2d 488, 496 (1987). This Court has explained that "[t]he doctrine of reasonable expectations is essentially a rule of construction, and unambiguous contracts do not require construction by the courts." 177 W.Va. at 742, n. 7, 356 S.E.2d at 496, n. 7. Given the facts of this case, we find that the doctrine of reasonable expectations does not apply because the policy language at issue was not ambiguous.

## IV.

## CONCLUSION

Based on all the above, we find that the circuit court properly granted summary judgment to State Farm. Accordingly, the final order of the Circuit Court of Wayne County entered on May 31, 2005, is affirmed.

Affirmed.

Starcher, J., dissenting:

(Filed July 11, 2006)

I dissent to the conclusion reached by the majority opinion.

Plaintiff Carolyn Jenkins purchased an underinsured motorist insurance policy with limits of $100,000 per person. This policy—by law, and by its own terms—protected her husband, Roy Jenkins, regardless whose car he was riding in. Roy Jenkins was then killed in an automobile accident by a driver who was, indisputably, under-insured.

But even though Ms. Jenkins bought $100,000.00 in coverage, paid State Farm premiums for $100,000.00 in coverage, she is barred from claiming her $100,000.00. Why? Because Mr. Jenkins was killed while driving a car—owned by his mother—which only had $25,000.00 in underinsured motorist coverage with State Farm.

The plaintiff in this case isn't trying to "stack" the various automobile insurance policies. The fact that these policies were purchased separately on separate vehicles for separate premiums is, as a matter of law, irrelevant. The plaintiff cannot collect under each policy, but can collect only under one policy. This Court and the Legislature persist in letting the insurance industry get away with this "criminal enterprise," and I will not once again waste valuable ink railing against this modern variation of the "robber baron."

The plaintiff in this case only wanted what she paid for: $100,000.00 in coverage. She contracted for it, she paid the premiums for it, State Farm promised to pay it, and she should get it. The majority disagrees.

Instead, the majority opinion decides that Ms. Jenkins' contract could be altered by the existence of someone else's contract. Because Mr. Jenkins' mother also bought a policy from State Farm with $25,000.00 in coverage, then Ms. Jenkins couldn't get what she paid for; she could only get what her husband's mother paid for.

Let's put this in concrete, non-insurance terms we can all understand. Say a car dealer owns a car lot. I walk onto the lot and pay the dealer $100,000.00 for a shiny,

new, gas-guzzling luxury vehicle. The same day, my wife walks onto the same new car lot and buys a mid-sized sedan for $25,000.00. My son (who still lives at home) comes by a few days later and buys a beat up, used jalopy sitting on the back of the lot for $5,000.00. Should I get the luxury vehicle, my wife the sedan, and my son the jalopy? Not under the majority's reasoning.

The majority reasons that we get to drive home together in the beat up jalopy. And, the car dealer gets to keep all of the money for the three vehicles. Why? Because, buried in the fine print of each car's purchase contract is a clause saying this: if anyone in the *same family* buys a different car from the same dealer, then the family can only drive home whichever car is cheapest.

In any other context, this Court would find such a contract void for unconscionability and for absurdity. But in the realm of insurance, this Court finds that which is absurd to be "good public policy." The repeated threat from the insurance industry is that "if the Court rules against an insurance company, then every West Virginian will pay more for insurance." The Court should not kowtow to this threat. Making insurance companies provide what people paid for is not bad public policy.

I therefore respectfully dissent.