Darla George INGLES, Plaintiff,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Defendant.

No. CIV.A. 2:02–0033.

United States District Court,
S.D. West Virginia,
Charleston Division.

June 4, 2003.

Barry L. Bruce, Barry L. Bruce & Associates, Lewisburg, WV, for Plaintiff.

Charles S. Piccirillo, Kelly R. Charnock, Shaffer & Shaffer, Madison, WV, for Defendant.

## MEMORANDUM OPINION AND BRIEFING ORDER

HADEN, District Judge.

Pending are the parties' cross motions for summary judgment. The Court **GRANTS** in part State Farm's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment, partially without prejudice. The parties are **ORDERED** to brief the remaining issue discussed *infra* according to the deadlines set.

## I. INTRODUCTION

The fundamental dispute in this action centers around Plaintiff's attempt to engage in "stacking" of underinsured motorist coverage under more than one policy potentially covering automobiles owned by her family. One noted commentator in this area has explained:

> "Stacking" of automobile liability coverages refers to the piling up of multiple coverages from multiple policies, or the piling up of coverages of multiple vehicles in a single policy, when there is only one loss.

Thomas C. Cady and Christy Hardin Smith, *West Virginia's Automobile Insurance Policy Laws: A Practitioner's Guide*, 97 W. Va. L.Rev. 583, 609 (1995). By way of background, the Supreme Court of Appeals has held that under some circumstances a contractual provision prohibiting stacking of underinsured motorist coverage may be enforced if the policy reflects a multiple vehicle discount. *See, e.g., Dairyland Ins. Co. v. Fox*, 209 W.Va. 598, 602, 550 S.E.2d 388, 392 (2001).

## II. FACTUAL BACKGROUND

Plaintiff Darla George Ingles instituted this action against State Farm Mutual Automobile Insurance Company ("State Farm"). The action stems from an automobile accident of December 14, 1999. While traveling north on U.S. Route 219 near Maxwelton, Plaintiff was injured by Frances M. McKinney, whose automobile crossed the center line and struck Plaintiff's.

As a proximate result of the accident, Plaintiff incurred medical expenses of $67,000.00. She also received permanent disability ratings of her lower left and right extremities of 21% and 7% respectively.

Plaintiff collected the per-person liability policy limits of $100,000 from McKinney's insurer. State Farm consented to the settlement and waived subrogation. On the accident date, Plaintiff's vehicle was insured under a State Farm automobile policy initially purchased April 19, 1996.

In September 2000, State Farm paid Plaintiff the $20,000.00 coverage limits due under her policy. Plaintiff accepted payment, while reserving her right to pursue an action seeking additional monies under her own policy and more extensive coverage through stacking underinsured benefits available under two other State Farm policies issued to her parents, Richard and Kimberly George.[1] Those policies contained underinsured motor vehicle coverage limits of $100,000 per person/$300,000 per occurrence.

State Farm did not provide the Georges a multiple vehicle discount for several years after their policies became effective. Also, at the time of her application, a

---

1. On October 24, 1979, the Georges secured coverage under a State Farm Policy. On the accident date it contained underinsured motorist coverage limits of $100,000 per person and $300,000 per occurrence. On August 11, 1982 the Georges purchased another State Farm policy with the same underinsured motorist coverage limits. As noted, Plaintiff applied for her separate coverage on April 19, 1996.

multiple vehicle discount did not appear on the calculation of Plaintiff's premium. Long prior to the accident, however, the Georges began receiving an underinsured multiple vehicle discount from State Farm on their policies. Plaintiff began receiving the discount from the inception of her policy. Prior to the accident, the parents also received on both policies an Amendatory Endorsement and an explanation of anti-stacking language contained within. The Amendatory Endorsement was shown on the Declarations Page of Plaintiff's policy and was immediately effective.

On the accident date, Plaintiff was an emancipated 21 year old residing with the Georges. Prior to the accident, the Georges received a written offer to purchase underinsured motor vehicle coverage from State Farm, although the commercial reasonableness of the offers is now in dispute.

Plaintiff received and signed her selection/rejection forms relating to underinsured motor vehicle coverage at the time of her application. The forms indicate the purchase of such coverage in the amount of $20,000.00 per person/$40,000.00 per occurrence. These limits were in effect on the accident date. Plaintiff complains the form (1) did not state whether a multiple vehicle discount applied to her underinsurance policy and, (2) when she applied, a multiple vehicle discount was not reflected on the application premium calculation.

On August 16, 1995 State Farm submitted a form filing to the West Virginia Insurance Commissioner incorporating anti-stacking language through Amendatory Endorsement 6090Q. The filing was approved for use in West Virginia on or after August 30, 1995. On August 2, 1995 State Farm submitted a rate filing to the Commissioner incorporating a proposed 10% multiple vehicle discount on its underinsured vehicle coverage to reflect its savings resulting from *West Virginia Code*

33–6–31(b). This provision effectively eliminated the potential of stacking single policies within one household. The Commissioner approved Amendatory Endorsement 6090Q for use in West Virginia on or after August 30, 1995 and approved the rate filings for use in West Virginia on or after January 1, 1996.

Plaintiff complains State Farm unilaterally, without any bargaining between the parties, effected a multiple vehicle discount for underinsurance coverage of 10% effective January 1, 1996 and without prior approval from the Commissioner. It does not appear that either Plaintiff or her parents ever had the opportunity to bargain for the discount and, in fact, did not request the discount, nor had it explained to them.

## III. DISCUSSION

### A. *Summary Judgment Standard*

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however; "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of

summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

## B. The Merits

### 1. Did Plaintiff Receive a Commercially Reasonable Offer to Purchase Underinsurance Coverage?

*West Virginia Code* Section 33–6–31(b) provides:

> *Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an ... underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.* Regardless of whether motor vehicle coverage is offered and provided to an insured through a multiple vehicle insurance policy or contract, or in separate single vehicle insurance policies or contracts, no insurer or insurance company providing a bargained for discount for multiple motor vehicles with respect to underinsured motor vehicle coverage shall be treated differently from any other insurer or insurance company utilizing a single insurance policy or contract for multiple covered vehicles for purposes of determining the total amount of coverage available to an insured....

W. Va.Code § 33–6–31(b) (emphasis added). Section 33–6–31d(a) provides:

> (a) Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article shall be made available to the named insured *at the time of initial application for liability coverage and upon any request of the named insured on a form prepared and made available by the insurance commissioner. The contents of the form shall be as prescribed by the commissioner and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage.* The form shall be made available for use on or before the effective date of this section. The

form shall allow any named insured to waive any or all of the coverage offered. W. Va.Code § 33–6–31d(a) (emphasis added). Section 33–6–31d(b) provides pertinently:

The contents of a form described in this section which has been signed by an applicant *shall create a presumption that such applicant and all named insureds received an effective offer of the optional coverages described in this section and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form. Such election or rejection shall be binding on all persons insured under the policy.*

W. Va.Code § 33–6–31d(b) (emphasis added).

The Court has reviewed the form offer mandated by the West Virginia Insurance Commissioner. The form presented to Plaintiff on or about the day she applied for her policy is materially identical to the Commissioner's form. Accordingly, this invokes the presumption adopted in Section 33–6–31d(b).

■ In an effort to avoid application of the presumption, Plaintiff offers a number of arguments. First, she asserts the form provided to her regarding selection of underinsured coverage failed to notice required information as to whether a multiple vehicle discount applied. Indeed, on the form next to the information on multiple vehicle discounts is written "N/A."[2] The reason for this "omission," according to State Farm, is that it does not offer its West Virginia policyholders the option of refusing a multiple vehicle discount. (Def.'s Resp. at 4 ("Neither the insurer or the insured has the choice as to whether or not the multi-vehicle discount will apply, as it is the only product offered by the defendant which has been approved by the West Virginia Insurance Commissioner. The multi-vehicle discount applies if there is more than one vehicle insured by State Farm in the home.").) Plaintiff has not countered this explanation in any way.

■ Second, Plaintiff asserts the underinsured premium reflected on her application indicates she did not receive a multiple vehicle discount. This is true. The $11.80 charge on the application is the same as the premium on the underinsured selection/rejection form, reflecting a multiple vehicle discount not being assigned. The application, however, states "THE PREMIUM SHOWN BELOW *MUST BE IN COMPLIANCE WITH THE COMPANY'S RULES AND RATES AND IS SUBJECT TO REVISION.*" (Ex. A–1, Pl.'s Mot. Summ. J. (emphasis added).) Plaintiff thus was on notice that an omission or error of the agent in the initial calculation of the premium would not bind State Farm.

More importantly, Plaintiff has not challenged State Farm's assertion she "cannot, and apparently does not, maintain that she ever paid a premium for UIM coverage that did not include the multi-car discount." (Def.'s Resp. at 5.) To do so would apparently contradict one of her own exhibits, the declaration sheet stating the particulars of her coverages. (*See* Ex. J, Pl.'s Mot. Summ. J. at 1 (reflecting $10.60 premium for underinsured motorist coverage, the same amount reflected on the form when a multiple vehicle discount is assigned, and further reflecting "UNDERINSURED MOTOR VEHICLE COVER-

---

**2.** The form did contain the alternative rates applicable for a premium with or without a multiple vehicle discount.

AGE MULTI–VEHICLE DISCOUNT APPLIES.").)

Third, Plaintiff asserts "that when [she] entered into her initial contract she thought she would be able to stack her underinsured coverage with the underinsured coverages of her parents." (Pl.'s Memo. in Supp. at 13.) Plaintiff's affidavit, however, makes no such claim. Indeed, it asserts no State Farm representative ever explained the concept of stacking to her. (Aff. of Darla George Ingles ¶ 1, Ex. I, Pl.'s Mot. Summ. J.)

■ Fourth, she asserts that when she was given the multiple vehicle discount in 1996, she should have received another offer to purchase underinsured coverage equal to or greater than her liability coverage. Section 33–6–31d(a), however, requires the form only "be made available … at the time of initial application for liability coverage and upon any request of the named insured." *Id.* A valid, initial offer was made and refused at the time of application.[3]

Although Plaintiff could have requested a new form, she did not. Again, the application stated the initial premium was subject to revision, and, when it was revised on the declaration sheet sent to her just days later, she did not make any request for modification to her underinsured coverage. Of greater moment, however, is the fact that when her policy was reinstated in February 2000 following cancellation, she elected to purchase not the higher limits equal to her liability coverage but rather the underinsured motor vehicle coverage with the same limits she originally chose in 1996. This calls into question whether Plaintiff ever intended to secure limits higher than those she originally chose.

In sum, State Farm could not offer a product it did not have, and it could not withhold a discount that had not been given. Accordingly, the presumption contained in Section 33–6–31d(b) controls. As a matter of law, Plaintiff received an effective offer of the optional underinsured coverages but knowingly and intelligently rejected it. The Court **GRANTS** this portion of State Farm's motion for summary judgment and **DENIES** summary judgment to Plaintiff on this issue.

### 2. May Plaintiff Stack Her Underinsured Coverage With the Like Coverage Available Under Her Parents' Policies?

West Virginia Code Section 33–6–31(b) provides pertinently:

> *is the beginning point for analysis, not the end of it;* what courts aim at doing is distinguishing *good* adhesion contracts which should be enforced from *bad* adhesion contracts which should not."

State ex rel. Dunlap v. Berger, 211 W.Va. 549, 557, 567 S.E.2d 265, 273 (2002)(emphasis added). One of the many difficulties with the argument is that State Farm complied with the statute's requirements for making a sound offer of optional underinsured vehicle coverage. If State Farm is found guilty of adhesive practices, then, the State would be party to them as well. In any event, the instant facts do not give rise to a reasonable inference a *prohibited* contract of adhesion was made.

---

**3.** Plaintiff notes State Farm did send a new form to another of its insureds, Sara Godby, after the multiple vehicle discount was given on her policy. Assuming the veracity of this assertion, it does not demonstrate State Farm was under legal obligation to make the offer.

Plaintiff also asserts the changed premium resulted in a contract of adhesion. Quoting Professor Corbin, Justice Starcher recently observed:

"Since the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable. Instead courts engage in a process of judicial review.… Finding that there is an adhesion contract

Regardless of whether motor vehicle coverage is offered and provided to an insured through a multiple vehicle insurance policy or contract, or in separate single vehicle insurance policies or contracts, *no insurer or insurance company providing a bargained for discount for multiple motor vehicles with respect to underinsured motor vehicle coverage shall be treated differently from any other insurer or insurance company utilizing a single insurance policy or contract for multiple covered vehicles for purposes of determining the total amount of coverage available to an insured.*

W. Va.Code § 33–6–31(b) (emphasis added). All of the policies in this case also contained the following language on the day of the accident:

THERE IS NO COVERAGE UNDER COVERAGE W:

1. FOR *BODILY INJURY* TO AN *INSURED:*

a. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED BY *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS:

. . . . .

(2) INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE UNDER ANOTHER POLICY ISSUED BY US. This does not apply to *your car* [.]

▮ Plaintiff does not attack the language of the anti-stacking provision or in any way attempt to assert it should be read to permit stacking. Rather, Plaintiff's primary argument in seeking to stack her parents' coverage on to her own, similar to the argument rejected *supra,* is that she did not want the multiple vehicle discount applied to her underinsured coverage. As State Farm has noted, however, that is the only means by which it offered

underinsured coverage to policyholders in West Virginia. Again, if Plaintiff did not wish the multiple vehicle discount, she did not have to search the lengthy policy to determine it had been applied. Rather, that fact was disclosed prominently on the declaration page she received shortly after executing her application.

Plaintiff also asserts the Court should ignore the fact her parents' policies also reflected multiple vehicle discounts, thus precluding stacking. She correctly notes that until 1996, the parents' policies did not reflect a multiple vehicle discount. She then asserts the discount was added without notice to them during that year. She argues this did not satisfy the "bargained for discount" envisioned by Section 33–6–31(b).

The argument, however, misconceives the nature of insurance rate setting. Judge Chambers' recent, cogent observations make the point:

West Virginia courts have not required haggling over the amount of the discount by individual policyholders. In fact, as State Farm points out, such individual negotiation is not permitted. Rather, State Farm rates are approved by the Insurance Commissioner and must be relied upon in determining the insurance rate for individuals seeking coverage by State Farm. The fact that such a discount was provided is the "bargained for" consideration for the anti-stacking language.

*Maynard v. State Farm Mut. Auto. Ins. Co.,* No. 3:01–0067, slip op. at 4 (S.D.W.Va. Oct. 24, 2001).

▮ Plaintiff next asserts the multiple vehicle discount given to her parents was not adjusted appropriately in light of the coverage they lost as a result of the discount. The Insurance Commission's Rates and Forms Division reviews and approves

or disapproves rate filings and determines whether they satisfy statutory requirements. The Division is responsible for assuring rates are neither excessive, unjust, or unfairly discriminatory. The office passed upon the premium rates charged and, presumably, discounts given. It is not the function of this Court or a jury to second-guess that quintessentially administrative function.

Plaintiff closes with the alternative argument that if she is not entitled to stack with her parents' coverage, she is entitled nonetheless to the highest underinsured coverage available under either her policy or one of her parents' policies.

Of the seventy-four (74) pages utilized by the parties to brief the extant issues, only two (2) pages are devoted to this issue. Review of the policy and the endorsement discloses other provisions, in addition to the two relied upon by the parties, which may impact the question. Accordingly, the parties are **ORDERED** to re-brief this issue according to the following schedule:

1. No later than June 20, both parties may file an opening brief not to exceed ten (10) pages; and

2. No later than July 7, each may respond to the opposition's opening brief, with the same ten page limit.

## IV.  CONCLUSION

The Court **GRANTS** in part State Farm's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment, partially without prejudice. The parties are **ORDERED** to brief the remaining issue discussed *supra* according to the deadlines contained herein.

The Clerk is directed to send a copy of this Memorandum Opinion and Briefing Order to counsel of record via facsimile and to post a copy on the Court's website at www.wvsd.uscourts.gov.