584 S.E.2d 913

Frances A. Horton JOSLIN, Administratrix of the Estate of Albert H. Horton, deceased, Plaintiff Below, Appellee,

and

Catherine Wilkinson, Administratrix of the Estate of Mary Horton, deceased, Intervening Plaintiff Below, Appellee,

v.

Thomas MITCHELL and Yurway Transportation Services, Inc., Defendants Below, Appellees,

State Farm Mutual Automobile Insurance Company, Appellant.

No. 31035.

Supreme Court of Appeals of West Virginia.

Submitted June 11, 2003.

Decided July 3, 2003.

---

Lester C. Hess, Esq., Anthony I. Werner, Esq., Bachmann, Hess, Bachmann & Garden, PLLC, Wheeling, for Appellee Frances A. Horton Joslin.

Jeffrey A. Holmstrand, Esq., McDermott & Bonenberger, PLLC, Wheeling, for appellant State Farm Mutual Automobile Insurance Company.

James G. Bordas, Jr., Esq., Scott S. Blass, Esq., James B. Stoneking, Esq., Bordas & Bordas, PLLC, Wheeling, for Appellee Catherine Wilkinson.

STARCHER, Chief Justice.

In this appeal from the Circuit Court of Ohio County, we are asked to review several orders where a circuit court allowed two insureds to aggregate or "stack" underinsured motorist coverage under five insurance policies, despite anti-stacking language in the policies. The circuit court also allowed the insureds to recover the "per accident" limits of coverage rather than the "per person" limits, after finding the policy language ambiguous.

After careful consideration of the briefs, the arguments of the parties, and all other matters of record, we reverse the circuit court's orders.

## I.

### *Facts & Background*

The instant case involves a dispute over underinsured motorist coverage between the appellees, the administrators of the estates of Albert and Mary Horton, and the appellant, State Farm Mutual Automobile Insurance Company ("State Farm").

The underlying facts of the case are undisputed. On November 10, 1996, Albert and Mary Horton were sitting in their vehicle, stopped in traffic on an interstate highway. A fully loaded tractor-trailer driven by defendant-below Thomas Mitchell, and owned by defendant-below Yurway Transportation Services, Inc., plowed at high speed into the Hortons' vehicle, killing both Mr. and Mrs. Horton.

At the time of the accident, Albert was forty-four years old, and Mary was fifty-three, and both had been employed for many years at Wheeling Hospital. They had been married for thirteen years, and were survived by Mary's three children from a prior marriage (including appellee Catherine Wilkinson), and Albert's mother (appellee Frances A. Horton Joslin).

The appellees initiated the instant lawsuit against the defendants, Mr. Mitchell and Yurway Transportation, and subsequently settled the action for the limits of the defendants' insurance coverage. The appellees, contending that they had not been fully compensated for their losses, then sought underinsured motorist benefits from several policies issued by the appellant, State Farm. For purposes of this case, the appellees and State Farm have stipulated that the appellees losses are at least $1.3 million in excess of the amounts the appellees have already collected.

The parties agree that the Horton household had five different automobile insurance policies issued by State Farm covering five different vehicles. These policies were purchased at various times between 1986 and 1996. The policies also had different "named insureds:" three of the policies listed Albert Horton as the named insured; one policy was issued to Mary Horton and her son, John C. Wilkinson; and the last policy was issued solely to Mary's son, James Wilkinson, Jr.

The parties agree that John and Mary Horton are "insureds" under these policies.[1]

Each of the five policies contained underinsured motorist coverage, with limits of $100,000.00 coverage for each person who was injured or died, up to $300,000.00 per accident. The appellees demanded that State Farm "stack" the policies, and thereby provide the "per person" limits of coverage for all five policies; in other words, the appellees asserted that they were entitled to $200,000.00 from each policy, for a total of $1 million in coverage. Furthermore, the appellees contended that the "per accident" limitation in the policy was ambiguous, and that they were therefore entitled to $300,000.00 from each policy, for a total of $1.5 million in available coverage.

State Farm, however, refused the appellees' demands. First, State Farm pointed to "anti-stacking" language in each policy. That language stated:

If any other underinsured motor vehicle coverage issued by us to you, your spouse, or any relative applies, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

Furthermore, State Farm stated, and the parties have stipulated for purposes of this appeal, that it gave a multi-car discount for underinsured motorist coverage on each of the five policies, a discount which State Farm argues that it gives whenever two or more private passenger vehicles used by persons residing in the same household are insured by State Farm.

In *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992), this Court concluded that anti-stacking language in an insurance policy is enforceable where the insurance company gives the policyholder a multi-car discount. We stated that when a "multi-car discount [is] given, it is obvious that the insured appellee bargained for only one policy and only one underinsurance motorist coverage endorsement." 188 W.Va. at 85, 422 S.E.2d at 807. On the basis of *Russell* and its progeny, State Farm asserted that the five policies could not be "stacked."

Furthermore, State Farm argued that the language regarding the policy limits was not ambiguous. Accordingly, in 1997 State Farm paid the appellees $100,000.00 for the claims of Mr. Horton, and $100,000.00 for the claims of Mrs. Horton.

State Farm filed a declaratory judgment action in the circuit court, and the appellees filed motions for summary judgment. In an order dated October 3, 2000, the circuit court concluded that the appellees could "stack" the available coverage under the five underinsured motorist policies at issue.

The circuit court examined a 1995 amendment to *W.Va.Code*, 33-6-31(b) which stated (with emphasis added):

Regardless of whether motor vehicle coverage is offered and provided to an insured through a multiple vehicle insurance policy or contract, or in separate single vehicle insurance policies or contracts, no insurer or insurance company *providing a bargained for discount for multiple motor vehicles* with respect to underinsured motor vehicle coverage shall be treated differently from any other insurer or insurance company utilizing a single insurance policy or contract for multiple covered vehicles for purposes of determining the total amount of coverage available to an insured.

The circuit court found this statutory language was designed to specify the circumstances where an insurer covering multiple vehicles with multiple policies—such as State

---

1. The policy defined an "insured" to mean:
 ... the person or persons covered by uninsured motor vehicle or underinsured motor vehicle coverage.
 This is:
 1. you;
 2. your spouse;
 3. any relative; and
 4. any other person while occupying with the consent of you or your spouse:
   a. your car;
   b. a temporary substitute car;
   c. a newly acquired car if registered in West Virginia; or
   d. a trailer attached to such car.
 5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above.
 The policy also defined a "relative" to mean a person "related to you or your spouse by blood, marriage or adoption who lives with you." *See also, W.Va.Code*, 33-6-31(c) [1998].

Farm in this case—could preclude the stacking of coverage under those policies. The circuit court concluded that the statute required any multi-car discount to be " 'bargained for' and not unilaterally imposed."

The circuit court found that State Farm never provided any of the named insureds on the five policies "the option to reject and/or waive the multi-vehicle discount in return for the availability of stacked underinsured motorist bodily injury coverage benefits from State Farm or from another insurance company." The circuit court therefore held that the "multi-vehicle discount was not 'bargained for' by the deceased Plaintiffs" as required by *W.Va.Code*, 33–6–31(b), and that State Farm could not enforce the anti-stacking language in the five policies.

After additional briefing by the parties, on April 4, 2002, the circuit court entered an order finding the policy language concerning the "each person" and "each accident" limits of the five policies to be ambiguous. The court construed the ambiguity against State Farm and ruled, in essence, that the appellees were entitled to recover the $300,000.00 "each accident" limits rather than the $100,000.00 "each person" limits. The circuit court then entered a "judgment order" on May 13, 2002, ordering State Farm to pay to the appellees the agreed-upon amount of damages, $1.3 million.

State Farm now appeals the circuit court's orders.

## II.

### Standard of Review

■ This Court reviews a circuit court's entry of a declaratory judgment *de novo*, because the principal purpose of a declaratory judgment action is to resolve legal questions. Syllabus Point 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). When a declaratory judgment proceeding involves the determination of an issue of fact, that issue may be tried and determined by a judge or a jury, just as issues of fact are

tried and determined in other civil actions. *W.Va.Code*, 55–13–9 [1941].[2] *See also*, Syllabus Point 16, *Mountain Lodge Ass'n v. Crum & Forster Indem. Co.*, 210 W.Va. 536, 558 S.E.2d 336 (2001) ("West Virginia Code § 55–13–9 and Rules 38, 39 and 57 of the Rules of Civil Procedure, read and considered together, operate to guarantee that any issue triable by a jury as a matter of right in other civil actions cognizable by the circuit courts shall, upon timely demand in a declaratory judgment proceeding, be tried to a jury."). Any determinations of fact made by the circuit court or jury in reaching its ultimate judgment are reviewed under a clearly erroneous standard. *Cox*, 195 W.Va. at 612, 466 S.E.2d at 463.

■ In this case we are asked to review the circuit court's interpretation of an insurance contract. In Syllabus Point 2 of *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999), we stated that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal." "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syllabus Point 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). *See also Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 482, 509 S.E.2d 1, 6 (1998).

## III.

### Discussion

State Farm's first argument is that the anti-stacking language in its policies is enforceable when, as here, its insureds received a multi-car discount.

The appellees, however, argue that *W.Va. Code*, 33–6–31(b) requires any multi-car discount and anti-stacking language to be "bargained for." Prior to 1996, the policies at issue did not contain anti-stacking language. Beginning in 1996—just prior to the Hortons'

---

**2.** *W.Va.Code*, 55–13–9 [1941] states:

When a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same

manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.

deaths—as each policy was renewed, State Farm advised the insureds that anti-stacking language had been added to the policies, and that a multi-car discount had been applied to the policies.[3] The appellees assert that State Farm's actions did not satisfy the "bargained for discount" envisioned by the Legislature when *W.Va.Code*, 33–6–31(b) was amended.

In *State Automobile Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990), we determined that the Legislative policy underlying the underinsured motorist coverage provisions of *W.Va.Code*, 33–6–31(b) "contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an ... underinsured motor vehicle." Syllabus Point 4, in part. We therefore held, in Syllabus Point 3 of *Youler*, that

> So-called "antistacking" language in automobile insurance policies is void under W.Va.Code, 33–6–31(b), as amended, to the extent that such language is purportedly applicable to ... underinsured motorist coverage, and an insured covered simultaneously by two or more ... underinsured motorist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of the judgment obtained against the ... underinsured motorist, whichever is less, as a result of one accident and injury.

In *Youler*, we considered a situation where an insurance company had issued two separate automobile insurance policies, both of which contained underinsured motorist coverage, on two vehicles owned by a single insured. We concluded that the anti-stacking language contained in the policies was contrary to *W.Va.Code*, 33–6–31(b), and allowed the insured to recover benefits under both policies.

Two years later, in *Russell v. State Automobile Mut. Ins. Co., supra,* we considered anti-stacking language where an insurance company had issued a single insurance policy that provided underinsured motorist coverage for two separate vehicles owned by a single insured. We concluded that *Youler* applied only where the insured was covered by "two or more ... underinsured motorist policy endorsements," and therefore did not "govern the instant situation where only one policy is involved." 188 W.Va. at 84, 422 S.E.2d at 806. We therefore held, at Syllabus Point 5 of *Russell,* that:

> West Virginia Code § 33–6–31 (1992) does not forbid the inclusion and application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by a single insurer and contains an underinsured endorsement even though the policy covers two or more vehicles. Under the terms of such a policy, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

Our decision in *Russell* turned on another fact that was not present in *Youler:* the existence of a multi-car discount. We found in *Russell* that

> ... because of the multi-car discount given, it is obvious that the insured appellee bargained for only one policy and only one underinsurance motorist coverage endorsement. This multi-car discount is of particular import since it signifies that the respondent was receiving a reduced rate on his automobile insurance in return for taking out only one policy instead of two. Meanwhile, the insurer was assuming an increased risk of injury which could occur while the insured was occupying the second vehicle as consideration for the second premium. The insured was therefore receiving the benefit of that which he bargained for and should not receive more. *Had this multi-car discount not been giv-*

---

**3.** The appellees, solely for purposes of their motion below, stipulated that the insureds in this case received a multi-car discount on all five policies. However, they actually contend that two of the policies at issue do not reflect a multi-car discount on their declarations pages; State Farm still asserts that while the insureds were not aware of the discount, the discount was still included in the premium calculation. We leave this and other factual issues regarding the multi-car discount for the circuit court to resolve on remand.

*en by the insurer and had the insured paid a full premium for both vehicles, a different result may have been reached by this Court.*

188 W.Va. at 85, 422 S.E.2d at 807 (emphasis added).

Insurance carriers interpreted the Court's decision in *Russell* as permitting the inclusion of anti-stacking language in insurance policies, so long as the insured has received a multi-car discount in return. As noted previously, in 1995, the Legislature amended *W.Va.Code,* 33–6–31(b) to expand the application of *Russell.* We concluded in *Dairyland v. Fox,* 209 W.Va. 598, 550 S.E.2d 388 (2001) (*per curiam*) that the amendment stretched the application of *Russell* from a single insurance company selling a single policy that covers multiple vehicles, to situations such as the instant case where a single insurance company sells multiple policies to the same insureds covering different vehicles. The 1995 amendment to *W.Va.Code,* 33–6–31(b) premises the enforceability of anti-stacking language on the notion that the insurance company has given the insured a "bargained for discount for multiple motor vehicles[.]"

■ The parties in the instant case dispute the meaning of the phrase "bargained for discount for multiple motor vehicles." The appellees assert—and the circuit court agreed—that the word "bargain" in the statute has the status of a verb, and means "to negotiate over the terms of a purchase, agreement, or contract" or "to come to terms." The appellees take the position that a provision in a contract is not "bargained for" merely because it holds benefits for both parties to the agreement, if one of the parties had no say in the matter.

State Farm, on the other hand, argues that "bargain" in the statute is a noun, and represents something acquired by one party to the contract at a lower price. State Farm contends that the Legislature's choice of the phrase "bargained for" is taken straight from this Court's decision in *Russell,* where the insurance company gave the insured a discount without any other alternatives; we found that the insured's multi-car discount and anti-stacking language simply reflected "the benefit of that which he bargained for

and [he] should not receive more." 188 W.Va. at 85, 422 S.E.2d at 807.

State Farm further argues that the courts of this State have never required insurance companies and insureds to "haggle" over the amount of a multi-car discount. State Farm points out that individual negotiation over rates is not permitted, and that premium rates are approved by the West Virginia Insurance Commissioner and must be relied upon in determining the insurance rates for all individuals buying coverage from State Farm.

■ In interpreting any statute, this Court looks to the intent of the Legislature. "It is a cardinal rule of construction governing the interpretation of statutes that the purpose for which a statute has been enacted may be resorted to by the courts in ascertaining the legislative intent." Syllabus Point 4, *State ex rel. Bibb v. Chambers,* 138 W.Va. 701, 77 S.E.2d 297 (1953). Whenever we interpret a statute, it "should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908).

We presume that the Legislature was familiar with our holding in *Russell* when it amended *W.Va.Code,* 33–6–31(b) in 1995, and familiar with other provisions in the insurance code that prohibit an insured from bargaining over his or her rates, since those are set by the Insurance Commissioner. *See W.Va.Code,* 33–20–3 to –5. The Legislature has entrusted to the Insurance Commissioner the power to regulate insurance rates to the end that they "shall not be excessive, inadequate or unfairly discriminatory." *W.Va.Code,* 33–20–3 [1976], and the Insurance Commissioner is required to "disapprove any such form of policy, application,

rider, or endorsement" if it does not comply with our insurance laws. *W.Va.Code*, 33–6–9 [1957]. An insurance policy can even be disapproved where the "benefits provided therein are unreasonable to the premium charged." *W.Va.Code*, 33–6–9(e).

■ We therefore hold that the phrase "bargained for discount" in *W.Va.Code*, 33–6–31(b) allows an insurance company to unilaterally give an insured a multi-car discount as consideration for the enforcement of anti-stacking language in an automobile insurance policy. The circuit court therefore erred in holding that stacking language in the instant policies could not be enforced, based upon the circuit court's interpretation of *W.Va. Code*, 33–6–31(b).

One additional point should be noted. The appellees assert that insurance contracts are contracts of adhesion, and that allowing insurance companies to unilaterally insert policy language in exchange for minimal consideration [4] is grossly unfair to insurance consumers. The appellees argue that the Insurance Commissioner has already approved a "standard" rate for insurance premiums, and a "discounted" rate for insurance premiums. Under existing circumstances, the appellees contend that State Farm could, if it so chose, allow insurance consumers to "bargain" over coverage by giving consumers the opportunity to choose or refuse to purchase stackable coverage. In support of its argument, the appellees cite to other jurisdictions where State Farm—due to legislative action—is required to offer insurance consumers the option of purchasing stackable coverage. *See, e.g.,* Fla.St. 627.727(9) [1997] (coverages are

stackable, however, insurers are authorized to make an offer of nonstackable coverage with an appropriately reduced premium); 75 Pa.C.S.A. 1738 [1990] (coverages are stackable, however, the insured has the right to "waive coverage providing stacking of uninsured or underinsured coverages") (*See also, Rudloff v. Nationwide Mut. Ins. Co.,* 806 A.2d 1270, 1273 (Pa.Super.2002), stating Pennsylvania statute was enacted out of "a legislative concern for the spiraling consumer cost of automobile insurance"); Haw.Rev. St. 431:10C–301(d) [1998] (stating that "[a]n insurer shall offer the insured the opportunity to purchase uninsured motorist coverage and underinsured motorist coverage by offering ... [t]he option to stack[.]"); Minn. St.Ann. 65B.47(7) [1996] (with regard to statutory no fault benefits, "[a]n insurer shall notify policyholders that they may elect to have two or more policies added together").[5]

■ While we find the appellees' contentions appealing, we believe they involve public policy determinations that are best addressed by the Insurance Commissioner or the Legislature. The Insurance Commissioner is better equipped to evaluate policy and rate structures employed by insurance companies, and to determine if an insurance company is failing to apply approved rates in the proper fashion. Further, it is the Legislature's, and not this Court's, province to enact legislation compelling insurance companies to offer insurance consumers more choice.

■ The second argument raised by State Farm is that the circuit court erred in

---

4. For example, in the instant case the appellees assert that Mr. Horton saved $4.10 as a result of his multi-car discount, in exchange for the anti-stacking provision that denied him and his family at least $400,000.00 in additional underinsured motorist coverage. The appellees further assert that State Farm's internal documents show that after State Farm inserted the anti-stacking provision in all of its automobile policies, the premiums it charged consumers for underinsured motorist coverage remained the same, while its payout for underinsured claims dropped by 35%.

5. The appellees suggest that State Farm already has policy language available that it could use to

advise its policyholders that they have the option to purchase, or decline to purchase, stackable insurance coverage. As the court stated in *Mangual v. State Farm Mut. Auto. Ins.,* 719 So.2d 981, 982 (Fla.App.1998), State Farm issued the policyholder a form that stated:

> This coverage can be purchased in a "stacking" form or a "non-stacking" optional form. Under the stacking form you can add the coverage available under two or more policies when damages exceed the limits of one policy. If you exercise the option to purchase, at a reduced rate, the non-stacking optional form you will have more limited coverage.

finding that the policy language regarding the limits of the policy was ambiguous, thereby allowing the appellees to recover the "each accident" limits of $300,000.00 rather than "each person" limits of $100,000.00. State Farm asserts that it agreed to pay the insureds any damages for "bodily injury" which the insureds were entitled to collect from the owner or driver of an underinsured motor vehicle. In the policy, "bodily injury" means "bodily injury to a person and sickness, disease or death which results from it." State Farm argues that the "each person" limit of liability is the amount of damages due to bodily injury to one person, and that the appellees in the instant case are only entitled to recover under the "each person" limit of liability, regardless of the number of beneficiaries who might share in the policy proceeds.

State Farm's policy stated:

The amount of coverage is shown on the declarations page under "Limits of Liability—W—Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to bodily injury to two or more persons in the same accident.

■■■ The appellees assert that this policy language is ambiguous because "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syllabus Point 1, *Prete v. Merchants Property Ins. Co. of Indiana,* 159 W.Va. 508, 223 S.E.2d 441 (1976). When an insurance policy is ambiguous, the policy will be strictly construed against the insurer and the ambiguity resolved in favor of the insured. Syllabus Point 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987).

The appellees point out that State Farm's "each person" limit of coverage contains the limiting language that " 'Bodily injury to one person' includes all injury and damages to others resulting from this bodily injury." In other words, the "each person" limit includes all claims, including derivative claims. Conversely, the appellees point out that the "each accident" limit applies only to "all damages due to bodily injury to two or more persons in the same accident"—and does not contain language making derivative claims subject to the same limit. On the basis of this perceived ambiguity, the circuit court apparently determined that the appellees had numerous derivative claims resulting from the death of Albert and Mary Horton, and that these claims were not subject to the "each person" limit of coverage.

■■■ "In construing any insurance policy, it is appropriate to begin by considering whether the policy language is in accord with West Virginia law. The terms of the policy should be construed in light of the language, purpose and intent of the applicable statute." *Adkins v. Meador,* 201 W.Va. 148, 153, 494 S.E.2d 915, 920 (1997). *W.Va.Code,* 33–6–31(b) requires insurance companies to offer underinsured motorist coverage with limits that are "not less than limits of bodily injury liability insurance ... purchased by the insured[.]" *W.Va.Code,* 17D–4–2 [1979] specifies the minimum amount of bodily injury liability insurance that companies must offer, but additionally states that the limits of the insurance must be offered in the following format:

[I]n the amount of twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident[.]

Furthermore, *W.Va.Code,* 33–6–31(b) allows insurance companies to offer *un* insured motorist coverage

... up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, in the amount of three hundred thousand dol-

lars because of bodily injury to or death of two or more persons in any one accident[.]

After carefully examining the State Farm policy, we conclude that the underinsured motorist coverage policy language fairly tracks the language contained in these statutes. Furthermore, in *Davis v. Foley*, 193 W.Va. 595, 457 S.E.2d 532 (1995), we concluded that the claims of an insured-decedent's survivors in a wrongful death claim were "derivative claims," and that an insurance company could through policy language limit those survivors to one recovery under the "per person" limits of an insurance policy. The language contained in State Farm's "each person" limits appears to comport with our holding in *Davis*.

Accordingly, we find no ambiguity in the policy language regarding the limits of the policy. The circuit court therefore erred on this point as well.

### IV.

#### Conclusion

The circuit court's orders of October 2, 2000, April 4, 2002, and May 13, 2002, are reversed, and the case is remanded for further proceedings.

Reversed and Remanded.

Justice McGRAW dissents, and reserves the right to file a separate opinion.

McGRAW, J., dissenting.

I dissent from the majority's opinion because the appellees did not agree to forego purchasing stackable automobile insurance coverage in exchange for a multi-car "discount," which saved them less than $5.00 while denying them some $400,000.00 in additional underinsured motorist coverage. To characterize this unilaterally-imposed provision as "bargained for" rather than "unconscionable" amounts to a legal fiction to which I cannot subscribe. For these reasons, I respectfully dissent.