698 S.E.2d 944

GUY R. CUNNINGHAM and Bridgett L. Cunningham, His Wife, Plaintiffs,

v.

Walter Lee HILL, an Individual; Erie Insurance Property and Casualty Company, a Pennsylvania Corporation; B. Michael Bentley, an Individual; Encompass Insurance Company of America, an Illinois Corporation; State Farm Mutual Automobile Insurance Company, an Illinois Corporation; and William Wilson, an Individual, Defendants.

Nos. 34861, 34862.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 9, 2010.

Decided June 18, 2010.

James D. Lamp, Julia A. Warren, Lamp, O'Dell, Bartram, Levy & Trautwein, Huntington, WV, for Defendant, Erie Insurance.

R. Carter Elkins, Laura L. Gray, Campbell Woods PLLC, Huntington, WV, for Defendant, State Farm.

Matthew M. Hatfield, Hatfield & Hatfield, Madison, WV, for Plaintiffs, Cunninghams.

Scott S. Blass, James B. Stoneking, Bordas & Bordas PLLC, Anthony I. Werner, Bachman, Hess, Bachman & Garden PLLC, Wheeling, WV, for Amicus Curiae West Virginia Association for Justice.

BENJAMIN, Justice:

These two consolidated matters are before the Court upon a certified question from the

Circuit Court of Boone County.[1] The certified question is as follows:

> When two insurers issue separate automobile liability insurance policies upon different vehicles containing underinsured motorist coverages which provide coverage for the same loss, is policy language which provides that the limits of underinsured motorist coverage available from all policies shall not exceed the liability limits of the policy with the highest limit of underinsured motorist coverage valid and enforceable?

The circuit court answered this question in the negative. Upon review of the parties' briefs, arguments and the record, we answer the certified question and remand this matter for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute and were stipulated by the parties below. On April 11, 2005, the plaintiff, Guy Cunningham, was operating a 2001 Mercury Grand Marquis in a southerly direction on U.S. Route 119, in Boone County, West Virginia. At the time, Mr. Cunningham was in the scope and course of his employment with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives. The 2001 Mercury Grand Marquis was owned by his employer, the United States government. Also on that date, Walter Hill was operating a 1997 Chevrolet truck, owned by Beaury Cochran, in a northerly direction on U.S. Route 119. Walter Hill turned the 1997 Chevrolet truck across U.S. Route 119 to enter Big Ugly Road and struck the vehicle operated by Mr. Cunningham. Mr. Cunningham was injured as a result of the collision.

The vehicle operated by Walter Hill was insured under an automobile liability insurance policy issued by West Virginia National

Auto Insurance Company. West Virginia National Auto paid its per person liability policy limits of $20,000.00 to Mr. Cunningham. There was no underinsured motorist coverage upon the 2001 Mercury Grand Marquis operated by Guy Cunningham at the time of the accident.

On the date of the accident, Mr. Cunningham and his wife were the named insureds under an automobile liability insurance policy issued by Erie which provided coverage upon a 2001 Chevrolet Silverado and a 2003 Cadillac Escalade. The Erie policy, which was in full force and effect on that date, contained underinsured motorist coverage with limits of $100,000 per person and $300,000 per accident. Additionally, on that date, Mr. Cunningham was also the named insured under a liability insurance policy issued by State Farm, which covered a 1995 Harley Davidson motorcycle. The State Farm policy, which was in full force and effect on that date, contained underinsured motorist coverage with limits of $50,000 per person and $100,000 per accident.

Both the Erie policy and the State Farm policy contained policy language which limited recovery to the highest liability limits available when more than one policy provided underinsured motorist coverage. Specifically, the Erie policy provided the following in the uninsured/underinsured endorsement:

**Other Insurance:**

If **"anyone we protect"** has other similar insurance that applies to the accident, **"we"** will pay **"our"** share of the loss, subject to the other terms and conditions of the policy and this endorsement. **"Our"** share will be the proportion of the Limit of Protection of this insurance bears to the total Limit of Liability of all applicable insurance. Recovery will not exceed the highest limit available among the applicable policies.

The State Farm policy specifically provided:

1. Both Erie Insurance Property and Casualty Insurance Company ("Erie") and State Farm Mutual Automobile Insurance Company ("State Farm") filed Petitions requesting this Court certify the circuit court's certified question. Both petitions were granted and the matters were consolidated for purposes of argument, consideration, decision and opinion. We also wish to acknowledge the *Amicus* Brief filed by the West Virginia Association for Justice, which supports the decision of the circuit court and the position asserted by the Cunninghams.

**If There is Other Coverage—Coverage W**

1.  If underinsured motor vehicle coverage for ***bodily injury*** is available to an ***insured*** from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, ***persons*** covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

2.  Subject to item 1 above, any coverage applicable under this policy shall apply:

    . . .

    b.  on an excess basis if the ***insured*** sustained bodily injury while ***occupying*** or otherwise using a vehicle not owned by or leased to ***you, your spouse,*** or any ***relative.***

3.  Subject to items 1 and 2 above, if this policy and one or more other policies provide coverage for ***bodily injury***:

    . . .

    b.  on an excess basis, we are liable only for our share. Our share is that percent of the damages payable on an excess basis that the limit of liability of this policy bears to the total of all applicable underinsured motor vehicle coverage provided on an excess basis. The total damages payable from all policies that apply on an excess basis shall not exceed the amount by which the limit of liability of the single policy providing the highest limit of liability on an excess basis exceeds the limit of liability of the single policy providing the highest limit of liability on a primary basis.

Erie paid Mr. Cunningham $66,667.66 in underinsured motorist coverage benefits and State Farm paid Mr. Cunningham $33,333.34 in underinsured motorist coverage benefits, so that he received a total of $100,000.00 in underinsured motorist coverage benefits.

On March 23, 2007, the plaintiffs filed a Complaint against Erie and State Farm and others alleging entitlement to coverage limits from the underinsured coverage in policies issued to them by each insurer. Both Erie and State Farm filed Motions for Summary Judgment which contended that the unambiguous "other insurance" provisions in the policies only entitled the plaintiffs to collect the highest limit available under the two policies. Because this issue is one of first impression in West Virginia, the circuit court held certified question hearings on July 24, 2008 and October 29, 2008. By order dated December 30, 2008, the circuit court certified the question at issue pursuant to W. Va.Code § 58–5–2(1967) and answered it in the negative.

In its reasoning, the circuit court found that neither State Farm nor Erie was aware of the presence of the other and as each insurer insured one vehicle owned by the plaintiffs, there was no multi-vehicle discount for the plaintiffs. Although the circuit court did not dispute that a general discount may have been applied or given by either insurer to the plaintiffs, the court found that the plaintiffs received no benefit of buying two separate automobile insurance policies. The circuit court specifically found that West Virginia law and public policy favor full compensation to the plaintiffs and that W. Va.Code § 33–6–31(b)(1998) would be violated by application of the State Farm and Erie policy limiting provisions relating to the underinsured motorist coverage policy limits.

Additionally, the circuit court found that the language in the Erie underinsured motorist policy was ambiguous because in addition to the policy language quoted above, the Erie policy's Uninsured/Underinsured Motorists Coverage Endorsement also contained the section entitled "Limitations of Payment" which provides in part:

**LIMITS OF PROTECTION**

**Limitations of Payment**

If **"anyone we protect"** insures more than one **"auto"** and none of the **"autos"** are involved in the accident, the highest limit of Uninsured/Underinsured Motorists Coverage applicable to any one **"auto"** will apply.

The circuit court believed that an ambiguity exists between the policy language which

provides "pay **'our'** share . . ." and the policy language which provides ". . . the highest limit of Uninsured/Underinsured Motorist Coverage applicable to any one **'auto'** will apply." Thus, the circuit court found that the ambiguity must be construed against Erie, the drafter. Due to the alleged ambiguity, the circuit court found that the limitation in the Erie insurance policy was void.

Following the circuit court's order, Erie and State Farm filed Petitions requesting this Court accept the circuit court's certified question as stated above. By Order dated April 30, 2009, this Court consolidated these matters and docketed them for resolution.

## II.

### STANDARD OF REVIEW

■ This Court has held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. Pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). Under this plenary standard of review, we now proceed to consider the arguments of the parties.

## III.

### DISCUSSION

Erie and State Farm ask this Court to answer the proposed certified question in the affirmative for two reasons. First, they contend that their respective underinsured motorist policy provisions contain unambiguous language that comports with this Court's prior decisions limiting or precluding recovery of such coverage. Specifically, they assign error to the circuit court's reliance upon the absence of a multi-vehicle discount as a basis for its conclusion because they contend that this Court has not found the existence of a multi-vehicle discount dispositive when upholding unambiguous policy language that limits or excludes underinsured motorist coverage. They assert that there is no legitimate reason why the validity of each respective policy's language hinges on whether the insurers were aware of each other's policies.

Second, Erie and State Farm maintain that the policy language at issue does not

violate West Virginia law or public policy, as it has been approved by the West Virginia Insurance Commission. Explicitly, they contend that the policy provisions at issue are "other insurance" provisions, governing coordination of benefits, applicable only in instances where more than one underinsured motorist coverage policy applies to the same loss. They maintain that the policy provisions at issue do not involve an offset. Because the Insurance Commissioner is charged with disapproving a form filing under W. Va.Code § 33–6–9(a)(1957) if it "is in any respect in violation of or does not comply with this chapter", Erie and State Farm assert that the Commissioner's failure to disapprove of its form filing indicates that the benefits provided are commensurate with the premium charged and are in compliance with West Virginia law.

Conversely, the Cunninghams essentially assert four arguments in support of the circuit court's answer to the certified question. First, they contend that W. Va.Code § 33–6–31(b) does not allow an insurer to reduce underinsured motorist coverage by payments made under another underinsured motorist policy. Second, they insist that as class one insureds, West Virginia law and public policy mandate that they be afforded the full underinsured motorist benefits available under both the Erie and State Farm policies. Third, they maintain that the Erie policy contains ambiguous language, and thus, the ambiguity must be construed in favor of coverage. Fourth, they argue that estoppel precludes Erie and State Farm from asserting policy language which would reduce the available underinsured motorist benefits from $150,000 to $100,000.

■ After reviewing the briefs, the record designated on appeal, legal authorities and the arguments of counsel, we determine that the certified question presented can be easily resolved by examining the plain and comprehensible public policy language enunciated in W. Va.Code § 33–6–31(b). For reasons explained more thoroughly below, we find that when two insurers issue separate automobile liability insurance policies upon different vehicles containing underinsured motorist coverages which provide coverage for the same

loss, policy language which provides that the limits of underinsured motorist coverage available from all policies shall not exceed the liability limits of the policy with the highest limit of underinsured motorist coverage is not valid and enforceable.

■ This Court has held that "[i]n construing any insurance policy, it is appropriate to begin by considering whether the policy language is in accord with West Virginia law. The terms of the policy should be construed in light of the language, purpose and intent of the applicable statute." *Adkins v. Meador,* 201 W.Va. 148, 153, 494 S.E.2d 915, 920 (1997).

W. Va.Code § 33–6–31(b), applicable to this case, provides, in relevant part:

Provided, that such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.... **No sums payable as a result of underinsured motorist coverage shall be reduced by payments made under the insured's policy or any other policy.**

(Emphasis added).

Erie and State Farm contend that their respective "other insurance" policy provisions limiting liability to the highest level of underinsured motorist coverage available do not conflict with W. Va.Code § 33–6–31(b) because they are not "setoff" provisions. They contend that they are not seeking a reduction of their coverage amount; rather, their reduced amount is the "sum payable" which is not thereafter setoff or reduced. They maintain that W. Va.Code § 33–6–31(b) does not direct exactly how the determination of the amount of "sums payable" is to be made, and that their policy terms and conditions establish the amount of the "sums payable." They insist that this Court must look to the clear and unambiguous language of their respective policies in order to ascertain the amount of "sums payable." The Cunninghams con-

versely maintain that W. Va.Code § 33–6–31(b) is directly on point and that the clear language of the statute blocks the reduction of both insurers' coverage amounts, regardless of how the insurer tries to write the policy to accomplish the reduction.

■ We stated in *Joslin v. Mitchell,* 213 W.Va. 771, 584 S.E.2d 913 (2003):

In interpreting any statute, this Court looks to the intent of the Legislature. "It is a cardinal rule of construction governing the interpretation of statutes that the purpose for which a statute has been enacted may be resorted to by the courts in ascertaining the legislative intent." Syl. Pt. 4, *State ex rel. Bibb v. Chambers,* 138 W.Va. 701, 77 S.E.2d 297 (1953). Whenever we interpret a statute, it "should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syl. Pt. 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908).

213 W.Va. at 777, 584 S.E.2d at 919.

■ Furthermore, in examining our statutory law, "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (*quoting Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992)). "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997) (*quoting Syl. Pt. 2, State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)). We have repeatedly recognized that "our most basic and preeminent concern ...

is that insurance consumers and insurance purveyors alike receive the benefit of their bargained for exchange when they meet to contract for motor vehicle insurance coverage." *Findley v. State Farm Mutual Automobile Ins. Co.*, 213 W.Va. 80, 97 n. 28, 576 S.E.2d 807, 824 n. 28 (2002) (*citing Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000)).

■■■ This Court has repeatedly recognized that W. Va.Code § 33–6–31, as amended, "is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." Syl. Pt. 7, in part, *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986); *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000). As we observed in *State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990):

> the legislature has articulated a public policy of full indemnification or compensation underlying both uninsured or underinsured motorist coverage in the State of West Virginia. That is, the preeminent public policy of this state in uninsured or underinsured motorist cases is that the injured persons be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage.

183 W.Va. at 564, 396 S.E.2d at 745 (emphasis in original). We likewise held in *Pristavec v. Westfield Insurance Company*, 184 W.Va. 331, 400 S.E.2d 575 (1990):

> "... in light of the preeminent public policy of the underinsured motorist statute, which is to provide full compensation, not exceeding coverage limits, to an injured person for his or her damages not compensated by a negligent tortfeasor, this Court holds that underinsured motorist coverage is activated under W. Va.Code, 33–6–31(b), as amended when the amount of such tortfeasor's motor vehicle liability insurance actually available to the injured person in

question is less than the total amount of damages sustained by the injured person, regardless of the comparison between such liability insurance limits actually available and the underinsured motorist coverage limits."

184 W.Va. at 338, 400 S.E.2d at 582.

■■■ Ever mindful of the spirit and intent of W. Va.Code § 33–6–31, this Court has cautioned that under W. Va.Code § 33–6–31(k), "[i]nsurers may incorporate such terms conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions *do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.*" Syl. Pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989)(emphasis added)[2]. We have also warned that "[t]his Court will be vigilant in holding the insurers' feet to the fire in instances where [terms, conditions and] exclusions or denials of coverage *strike at the heart of the purposes of the uninsured and underinsured motorist statutes* provisions." *Id.*, at 463, 383 S.E.2d at 95. *Accord*, Syl. Pt. 1, *Thomas v. Nationwide Mut. Ins. Co.*, 188 W.Va. 640, 425 S.E.2d 595 (1992); *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000); *American States Ins. Co. v. Tanner*, 211 W.Va. 160, 563 S.E.2d 825 (2002).

In examining the plain and clear language of W. Va.Code § 33–6–31(b) as it applies to the policy terms and conditions now before us, we find that policy language which provides that the limit of underinsured motorist coverage available from all policies shall not exceed the liability limits of the policy with the highest limit of underinsured motorist coverage conflicts with the spirit and intent of W. Va.Code § 33–6–31(b). The act of reducing one underinsured motorist policy by another thwarts the statutorily enunciated public policy of full indemnification. According to the plain language of W. Va.Code § 33–6–31(b), an underinsurer may not reduce the monetary extent of its coverage

2. The current amended version of W. Va.Code § 33–6–31(k) provides:
Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such *terms, conditions* and exclusions as may be consistent with the premium charged.
W. Va.Code § 33–6–31(k) (1998)(emphasis added).

based upon coverage afforded by any other insurance policy. Therefore, we cannot permit Erie and State Farm to artfully craft insurance policy definitions that accomplish a goal that is contrary to the public policy behind and the plain language of W. Va.Code § 33–6–31(b).[3]

Accordingly, we find that in the circumstances now before us, the policy provisions at issue violate the clear public policy language enunciated in W. Va.Code § 33–6–31(b), as the statute plainly provides that *"no sums payable as a result of underinsured motorist coverage shall be reduced by payments made under the insured's policy or any other policy."* Because the Cunninghams paid two full premiums for two separate underinsured motorist policies, we find that they are entitled to be fully indemnified.[4] To construe the language of subsection (b) otherwise would produce a result contrary to the express legislative intention that underinsured provisions are remedial in

nature and should be construed in favor of the insured. *See* Syl. Pt. 2, *Pristavec,* 184 W.Va. 331, 400 S.E.2d 575; Syl. Pt. 7, *Perkins v. Doe,* 177 W.Va. 84, 350 S.E.2d 711 (1986).[5]

## IV.

## CONCLUSION

Based on the foregoing, we answer the certified question in the negative. Accordingly, we remand this matter to the Circuit Court of Boone County for further proceedings consistent with this opinion.

**Certified question answered.**

3. In addition to the above noted policy considerations, the circuit court, in concluding that the policy provisions at issue were not valid and enforceable, found it significant that a multi-car discount had not been offered to the Cunninghams. The circuit court stated that:

> The Court further assigns as reasons for its answer that neither State Farm Mutual Automobile Insurance Company nor Erie Insurance Property and Casualty Company were aware of the presence of each other and as each insurer insured one vehicle owned by the plaintiff, there was no multi-vehicle discount for the plaintiffs. The Court does not dispute that a general discount may have been applied or given by either insurer to the plaintiffs. The Court finds that the plaintiffs received no benefit of buying two separate automobile insurance policies. The Court specifically finds that West Virginia law and public policy favor full compensation to the plaintiffs and W. Va.Code § 33–6–31(b) would be violated by application of the State Farm Mutual Automobile Insurance Company and Erie Insurance Property and Casualty Company policy provisions relating to underinsured motorist coverage policy limits.

We find that the issue of a multi-car discount is inapplicable under the facts of this case because the Cunninghams paid two premiums to two different insurers for two separate underinsured motorist policies.

4. Because we determine that the certified question presented can be resolved by examining the plain and clear public policy language enunciat-

ed in W. Va.Code § 33–6–31(b), it is not necessary for this Court to address the issue of whether the policy language in the Erie and State Farm policies was ambiguous. Finally, regarding Erie and State Farm's assertions that the Commissioner's failure to disapprove of its form filing indicates that the benefits provided are commensurate with the premium charged and are in compliance with West Virginia law, we accord this argument scant merit. When we have previously found policy provisions to be contrary to law and public policy, this Court has not hesitated to strike the same. *See, e.g., Jones v. Motorists Mut. Ins. Co.,* 177 W.Va. 763, 356 S.E.2d 634 (1987)(finding named driver exclusion not valid up to the mandatory liability limits of insurance); *Henry v. Benyo,* 203 W.Va. 172, 506 S.E.2d 615 (1998) (workers compensation exclusion not valid with respect to non co-worker tortfeasor); *Hamric v. Doe,* 201 W.Va. 615, 499 S.E.2d 619 (1997)(physical contact requirement not valid where there is independent third party testimony to verify the existence of phantom vehicle).

5. We take this opportunity to make it clear that while we reach the conclusion that insurers may not reduce sums payable under *underinsured motorist coverage* by payments made under the insured's policy or any other policy, this holding is not to be construed so as to invalidate "other insurance" provisions contained within automobile liability insurance policies. The remedial nature of West Virginia's underinsured statute, W. Va.Code § 33–6–31, necessitates this holding specific to this certified question.