No. 23-702 – *Erie Property & Casualty Company v. James Skylar Cooper*

**FILED**

**April 29, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WOOTON, Chief Justice, dissenting:

I respectfully dissent, as the majority's opinion signals a major, and wholly unwarranted, turnaround from this State's longstanding public policy: that injured persons should be fully compensated for damages caused by an uninsured or underinsured tortfeasor. *See Cunningham v. Hill*, 226 W. Va. 180, 186, 698 S.E.2d 944, 950 (2010) ("the legislature has articulated a public policy of full indemnification or compensation underlying both uninsured or underinsured motorist coverage in the State of West Virginia. That is, the preeminent public policy of this state in uninsured or underinsured motorist cases is that the injured persons be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage.") *Id*. (citing *State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990)); *see also* Syl. Pt. 4, *Pristavec v. Westfield Ins. Co*., 184 W. Va. 331, 400 S.E.2d 575 (1990) ("The uninsured/underinsured motorist statute, *W. Va.Code,* 33–6–31(b), as amended, 'is remedial in nature and, therefore, must be construed liberally in order to effect its purpose.'") (citing Syl. Pt. 7, *Perkins v. Doe,* 177 W. Va. 84, 350 S.E.2d 711 (1986)).

In my view, this case is quite simple. Erie Property & Casualty Company ("Erie") issued an insurance policy to Pison Management, LLC ("Pison") which provided

1

liability coverage not only for two vehicles owned by Pison but also for as many as twenty-five vehicles owned by Pison's employees and utilized, with Pison's permission, in the course of Pison's business. One of those insured but non-owned vehicles belonged to Rick Huffman ("Mr. Huffman"), a Pison employee, whose passenger, James Skyler Cooper ("Mr. Cooper"), also a Pison employee, was badly injured in a car wreck that occurred as the two were on their way to a job site. It is undisputed that the at-fault driver of the other vehicle involved in the wreck was an underinsured tortfeasor within the meaning of the law. It is also undisputed that Mr. Huffman's vehicle was an "insured but non-owned" vehicle under Pison's insurance policy. Further, under this Court's precedents Mr. Huffman was what this Court has termed a Class II insured, i.e., a "permissive user[]," see *Starr v. State Farm Fire and Casualty Co.*, 188 W. Va. 313, 318-19, 423 S.E.2d 922, 927-28 (1992), meaning that he was injured or damaged by an uninsured or underinsured motorist while using "the motor vehicle to which the policy applies" with permission, *see Progressive Max. Ins. Co. v. Brehm*, 246 W. Va. 328, 333, 873 S.E.2d 859, 864 (2022), but was not a "named insured [or] his or her spouse[.]" *Id*. (citing W. Va. Code § 33-6-31(c)). This conclusion flows naturally from the language of the statute:

> As used in this section, the term "bodily injury" includes death resulting therefrom and the term "named insured" means the person named as such in the declarations of the policy or contract and also includes such person's spouse if a resident of the same household and the term "insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person, except a bailee for

2

> hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies.[1]

*Id*. § 33-6-31(c) (footnote added).

In *Stone v. Liberty Mut. Ins. Co.*, 478 S.E.2d 883 (Va. 1996), the case upon which the majority primarily relies, the Virginia Supreme Court was asked to determine whether the plaintiff, who was injured by an underinsured motorist while using his personal vehicle to deliver pizzas for Tidewater Pizza, Inc. ("Tidewater"), could recover underinsured[2] motorist benefits under Tidewater's policy. Significantly – and in stark contrast to the facts of the instant case – the plaintiff in *Stone* stipulated that he was not an "insured" under the terms of the policy. Thus, the only question before the court was whether the plaintiff was an "insured" pursuant to the governing statute, VA. CODE ANN. § 38.2-2206B, which in turn would entitle him to underinsured benefits pursuant to § 38.2-2206A, a provision that requires any policy of automobile liability insurance issued in Virginia to include "an endorsement or provisions undertaking to pay the *insured* all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle[.]" *Stone*, 478 S.E.2d at 885 (emphasis added).

The statute in question, Virginia Code Annotated section 38.2-2206B, provides in relevant part that

---

[1] As noted *supra*, the parties agree that Mr. Huffman's vehicle was a covered vehicle under the policy.

[2] Throughout the *Stone* opinion, the court "use[d] the term 'uninsured' to include both underinsured and uninsured coverage." *Id*. at 883.

"insured" . . . means the named insured and, while resident of the same household, the spouse of the named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured[.]

The court determined that the plaintiff was not an insured under the statute for two reasons: first, because his vehicle was not "the motor vehicle to which the policy applies," and second, because he was not using his vehicle "with the expressed or implied consent of the named insured." As to the former, the court reasoned that

The language does not say "a," "any," "every," or "all." In two places, it provides "the" motor vehicle to which the policy applies. Stone was not using either of "the" motor vehicles to which the policy applies, the Ford or the Honda; he was using his own motor vehicle. Thus, the statute only requires, as to insureds of the second class, that uninsured motorist coverage be provided to those who are in either of *the* motor vehicles listed in the policy, as opposed to "any" vehicle to which the policy might apply.

*Id*.at 886. As to the second, the court held that Tidewater could not give "expressed or implied consent" for the plaintiff to use his personal vehicle because Tidewater did not "own the insured vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission." *Id*. (citations omitted).

In my view, this case was wrongly decided, for the reasons set forth in Judge Koontz' dissent. As to the first basis for the *Stone* majority's decision, the dissent correctly pointed out that "the motor vehicle *to which the policy applies*" does not mean "the motor vehicle

4

*. . . listed in the policy.*" *Id.* at 887 (emphasis supplied). In effect, the *Stone* majority effectively rewrote the statutory language in order to reach the intended result. It is disheartening, to say the least, that a majority of this Court sees fit to follow suit, construing the relevant language of West Virginia Code section 33-6-31(c), which defines an "insured" in part as "any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies," to exclude the named insured's employees who use, for business purposes, motor vehicles expressly insured under the policy but not specifically listed.

As to the second basis for the *Stone* majority's decision – that because Tidewater did not "own the [plaintiff's] vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission," *id.* at 886, the plaintiff could not be said to have driven his personal vehicle "with the expressed or implied consent of the named insured[]" – I wholeheartedly endorse the reasoning of the dissenting judge that this reasoning is insupportable in either logic or law. "[The plaintiff] was using a vehicle to which Liberty's liability policy applies because he was using it *in connection with Tidewater's business, and he was doing so with the consent of Tidewater*, the 'named insured.'" *Id.* at 888 (Koontz, J., dissenting) (emphasis added). In the instant case, as in *Stone*, there is a compelling inference that the employer gave the employee consent to use his personal vehicle for business purposes when it purchased liability insurance on that vehicle. This inference is particularly strong where,

as here, Mr. Huffman specifically falls within Erie's definition of "anyone we protect" as a person using an "auto we insure." *See supra* note 1. The *Stone* majority's hairsplitting decision to the contrary was antithetical to the Virginia statute – a statute materially similar to our own – which "is remedial in nature and is to be liberally construed so that its intended purpose, to protect the innocent victims of negligent uninsured/underinsured motorists, may be accomplished." *Id.* at 887. And again, it is disheartening that a majority of this Court sees fit to follow suit, finding (in essence) that Pison did not have the authority to do exactly what it did: in lieu of buying a fleet of company vehicles for employees to use in traveling to work sites, it authorized those employees to use their personal vehicles for business purposes.

Finally, the majority places great emphasis on what it deems the "long-recognized concept" that the purpose of underinsured motorist coverage is to "enable *the insured* to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured." *See Progressive Max Ins. Co. v. Brehm*, 246 W. Va. 328, 334, 873 S.E.2d 859, 865 (2022) (citation omitted). First, this is an incomplete statement of the law; as the majority goes on to acknowledge, West Virginia Code section 33-6-31(c) is intended to benefit not only named insureds but also permissive users. Additionally, to the extent that the majority can be read as holding that the purpose of underinsured motorist coverage is uniquely for the benefit of the named insured and permissive users of the *named insured's vehicle*, the majority impermissibly narrows the

6

scope of the statute, which extends coverage to the named insured and permissive users of "*the motor vehicle to which the policy applies*." *Id*.§ 33-6-31(c) (emphasis added). In my view, because Mr. Huffman's vehicle was insured under Pison's policy for liability purposes, it was a "vehicle to which the policy applies" and thus Erie was obligated to offer underinsured motorist coverage on it.

In short, the *Stone* majority worked very hard to "get to no," and the majority opinion in the instant case follows in lockstep, meanly parsing words and phrases in order to arrive at a very narrow reading of a very broad statute. I believe this Court should adopt the reading which best serves the intended purpose of West Virginia Code section 33-6-31(c): "protect[ing] the innocent victims of negligent uninsured/underinsured motorists[.]" *Stone v. Liberty Mut. Ins. Co*., 478 S.E.2d 883, 887 (Va. 1996) (Koontz, J., dissenting).

For these reasons, I respectfully dissent.